C. MOTHERSHED, Appellee,

v.

G.L. MOTHERSHED, Appellant.

No. 59363.

Supreme Court of Oklahoma.

March 26, 1985.

As Corrected March 27, 1985.

James W. Bill Berry & Associates by James W. Bill Berry, Oklahoma City, for appellee.

Lawrence, Ellis, Harmon & Harter, P.A. by William T. Brett and Jack R. Lawrence,

Gary L. Brooks & Associates by Gary L. Brooks, Oklahoma City, for appellant.

HODGES, Justice.

This appeal comes from George L. Mothershed (appellant) from a decree of divorce which dissolved his marriage to Carrilee Abernathy Mothershed (appellee) and determined the issues of division of property, alimony, child custody and child support. Appellant challenges here the property division aspects of the trial court's judgment.

The couple was married on April 11, 1963. At the time of their marriage both parties were in college at Northern Arizona University, Flagstaff, Arizona. Appellee owned a savings account, stock, automobile, personal jewelry, two life insurance policies, miscellaneous clothing, kennel equipment, horse tack and oil and gas lease interests, having an aggregate total value of $42,500. Appellant owned miscellaneous personal effects and an automobile, having an aggregate total value of $2,000.

In 1966, appellee's father, Jack H. Abernathy, formed Post Oak Oil Company ("Post Oak"). Mr. Abernathy was a long-time employee and one-third owner of Big Chief Drilling Company ("Big Chief"), an Oklahoma corporation and predecessor of Entex, Inc. In an attempt to perpetuate Big Chief and as an estate planning device, the oil and gas production then owned by Big Chief proportionate to Mr. Abernathy's one-third ownership interests were transferred to Post Oak along with 200 shares of Big Chief. Post Oak was initially capitalized with $80,000, divided into two classes of stock: 10,000 shares of common stock, par value $1.00, and 700 shares of preferred stock, par value $100. After incorporation, Mr. Abernathy gifted 2,400 shares of common stock to each of his two children. His daughter, appellee, received 2,400 shares of the common stock of Post Oak, and his son, Jack H. Abernathy, Jr., received 2,400 shares. Mr. Abernathy retained 5,200 shares of common stock and all the preferred stock. The gift of the stock to appellee and the son was issued in each child's name only, and was not given

jointly to each child and his or her spouse. Post Oak was formed as a closely held family corporation. In 1972, Post Oak redeemed the son's 2,400 shares of Post Oak common stock in exchange for 15,000 shares of Entex, Inc. ("Entex") stock. In 1975, the company exchanged Mr. Abernathy's 5,200 shares of common and old preferred stock for new preferred stock in Post Oak. Both parties, as directors, personally guaranteed the payment of preferred stock to Mr. Abernathy and his heirs or assigns under a stock option agreement. The common shares acquired by Post Oak from the son and Mr. Abernathy are carried as treasury stock. The result of these transactions left appellee as the sole holder of common stock which increased her percentage of equity ownership from 33% to 100%.

The trial court found that the 2,400 shares of common stock in Post Oak, which later became the total equity ownership of the company, was given to appellee by her father and was her sole and separate property, and was not intended by her father to be a gift jointly to her and appellant, but intended by him to be a gift solely to her. This particular finding by the trial court is the principal controversy in this appeal.

Appellant asserts four arguments on appeal: (1) The award of Post Oak Oil Company to appellee as her sole and separate property is contrary to established principles of equity and manifestly unjust; (2) The efforts, skills, labor and financial assistance of the appellant substantially enhanced the value of Post Oak Oil Company; (3) The appellee's gift of 2,400 shares of Post Oak Oil Company lost its character as appellee's separate property; and (4) 97% of the value of Post Oak Oil Company was acquired by the parties during marriage by purchase of the interest held by the other two stockholders, and this Court should impose an equitable trust thereon for the benefit of appellant.

The evidence reflects that appellee never participated in the management of the business and affairs of the company but relied upon her father and husband until after the

divorce suit was filed in March of 1981; however, she had served as secretary and director of Post Oak. After the reorganization of Mr. Abernathy's stock in 1975, Mr. Abernathy withdrew from management and control of the company and appellant assumed full control. Appellant was employed as president of the company from 1972 to 1976, and was paid a full time salary. During 1972 to 1975, Mr. Abernathy retained control of the company as Chairman of the Board and controlling stockholder. After 1976, appellant decided not to draw a salary from Post Oak due to the substantial amount of income he received from other sources. Specifically, a particular lease known as the "McClure Lease" generated between thirty and forty thousand dollars a month in cash. The trial court found said lease to be a marital asset because it was paid for by the individual borrowings of appellant notwithstanding that it was transferred out of Post Oak by appellant into his individual name. This finding is not contested by the parties. Additionally, Broadway Associates, a profitable partnership investment was acquired by appellant from Post Oak. The trial court's determination that Broadway Associates is jointly acquired property is also uncontested. Even though appellant drew no salary he received other benefits while employed at Post Oak. For example, the company provided automobiles, insurance and gasoline. In addition, appellant leased to the company personal property which was depreciated in his name rather than Post Oak. The evidence also reflects that, even though there was sufficient treasury stock available for purchase by appellant, at no time did he acquire any stock, common or preferred, of Post Oak or make any capital or financial investment in the company. On April 7, 1981, appellant was removed as an officer and director of the company by action of the Board of Directors.

The two principal assets of Post Oak consist of its oil and gas reserves and a block of 184,422 shares of Entex, Inc. stock. The trial court determined that the major sources of the increase of the valuation of Post Oak between January 1, 1975, and April 1, 1981, the period in which control and management was turned over to appellant, were the "natural economic appreciation" of these two principal assets and not due to the efforts, skills or funds of appellant. The trial court adopted the fair market valuation report on Post Oak prepared by Davis Petroleum Consultants, an engineering company obtained by the conservator at the direction of the trial court. Such report establishes that the oil and gas reserves increased from $1,166,634 value on January 1, 1975 to $2,477,686 on April 1, 1981. The report finds that the increase was due solely to the increase in the sales price of the oil and gas in the marketplace rather than any overall increase in the amount of reserves. The company's reserves actually decreased by approximately 40% during this period. Immediately before appellant took full control, Post Oak had 344,549 barrels of oil reserves and 1,866 mmcf of gas reserves. When appellant was removed from the company, the company's reserves had declined to 206,732 barrels of oil and 1,067 mmcf of gas.

The evidence further establishes that during this time frame the value of the company's block of stock in Entex increased from $653,934 to $2,707,800, notwithstanding that 78,756 shares were sold. The fair market value of Post Oak was found to be $1,502,458 on January 1, 1975 (the date which approximates the date when appellant assumed actual control of the company); $4,602,822 on March 1, 1981 (period immediately before appellant's removal); and $3,765,732 on July 1, 1982 (period under appellee's management). Such findings were determined as not reflective of the results of management of Post Oak by appellant. The evidence establishes that the company operated at a loss during the years appellant was in control except for two years, 1977 and 1979, when operating gains were reported. Gains were due solely to the sale of 6,000 shares and 45,000 shares of Entex stock, in 1977 and 1979, respectively, from the company's portfolio which generated enough

profit to overcome the losses. Had the sales not occurred, the company would have operated at a loss as in the other years of his control and management.

The acquisition of the Entex stock was accomplished solely by the original contribution in 1966 by Mr. Abernathy of the 200 shares of Big Chief at the time of the formation of Post Oak at an attributed value of $80,000 and a single purchase of 15,900 shares of Entex on the open market for a cost of $273,428.44 in 1974 which was personally guaranteed by appellant and appellee. In 1972, Big Chief was merged into United Gas Company, a publicly held corporation, which thereafter changed its name to Entex, Inc. Post Oak received 42,963 shares of Entex for its shares in Big Chief in connection with said merger. Subsequent to the merger, Mr. Abernathy withdrew from management of Post Oak because of possible conflicts of interest as he was Vice-Chairman of the Board of Entex. The present 184,422 Entex shares owned by Post Oak reflect the aforementioned contribution of Big Chief stock, the merger and 1974 purchase transaction, plus additions due to various stock dividends and stock splits, and minus 6,000 and 45,000 shares sold by Post Oak in 1977 and 1979, respectively.

■ It is our opinion that the trial court correctly awarded the 2,400 shares of common stock of Post Oak to appellee as her sole and separate property as it was not jointly acquired property within the meaning of 12 O.S.1981 § 1278. In *Longmire v. Longmire*, 376 P.2d 273, 276 (Okla.1962), we quoted with approval from *Turlington v. Turlington*, 193 Okl. 421, 144 P.2d 957 (1944), the standard of review to be applied in this case:

"An action for divorce and division of property is one of equitable cognizance and the judgment of the trial court in such a case will not on review be disturbed by this Court unless it be clearly contrary to the weight of the evidence."

Based upon our examination of the record, we conclude that the judgment was not against the clear weight of the evidence or unfair and inequitable considering all of the circumstances of the case.

The dispositive issue in the case is whether separate property given to appellee by her father should be subjected to property division because of appellant's managerial efforts, skills, and financial commitments which allegedly either enhanced the value of the property or changed the nature of the ownership. Appellant claims an ownership in the enhanced value or alternatively the entire value of the Post Oak stock. He further asserts that he has an ownership interest in the assets of Post Oak.

Appellant first contends that the trial court's award of Post Oak to appellee as her separate property is unfair, unjust and inequitable. This contention rests on a type of serfdom theory whereby the character of the enhanced value of the separate property of one spouse is converted into marital property by virtue of the fulfillment of the nonowning spouse's marital role. This theory is also advanced by appellant to support his argument that the stock lost its identity as appellee's separate property. Therefore, we will discuss both arguments together.

■ The gift of property to a spouse during marriage is considered separate property of such spouse and upon divorce it cannot be considered as having been acquired by the joint industry, or efforts of the parties to the subject marriage. *Armstrong v. Armstrong*, 462 P.2d 656, 658 (Okla.1969). Under 12 O.S.1981 § 1278, when a party's separate property has not been disposed of the separate property must be awarded to that person. *May v. May*, 596 P.2d 536, 539 (Okla.1979); *Williams v. Williams*, 428 P.2d 218, 222 (Okla. 1967); *Longmire v. Longmire*, 376 P.2d 273, 275 (Okla.1962).

The general rule for the award of increased or enhanced value of separate property in divorce suits in Oklahoma is set out in *Templeton v. Templeton*, 656 P.2d 250, 252 (Okla.1982):

"Jointly acquired property as defined by 12 O.S.1971 § 1278 is only that which

is accumulated by the joint industry of the husband and wife during the marriage. If one spouse brings separate property to the marriage, increased or enhanced value of the property will not constitute jointly acquired property during coveture unless the enhancement value was the result of joint efforts, skill or funds of both spouses. In order for a spouse to successfully prove that enhanced value is the result of joint endeavors, it must be shown that the net worth of the property increased during the marriage as the direct result of substantial contribution by the spouse of effort, skill or funds. Enhancement in the value of a spouse's separate property which is caused by appreciation, inflation, changing economic conditions, or circumstances beyond the parties' control is not jointly acquired property unless the nonowning spouse can prove that his/her contributions were also a causal factor. If so, the spouse is entitled to an interest in the appreciation of the property created through his/her efforts." (Footnotes omitted)

See also *Kirkland v. Kirkland,* 488 P.2d 1222, 1227 (Okla.1971); Domestic Relations: The Role of Joint Industry in the Determination of What is Jointly Acquired Property, 32 Okl.L.Rev. 214 (1979).

We fail to see how appellant's services as a husband and his performance in such related duties constituted joint industry contribution so as to cause the appreciation in value of Post Oak to be considered a marital asset. Moreover, the record reflects that appellant's managerial skills, efforts and financial commitments did not contribute to the appreciation of the value of Post Oak. The Davis Report, adopted by the trial court, discloses that the appreciation of Post Oak was due *solely* to the marketplace and its effect on the value of the two principal assets of the company rather than any effort of appellant.

In *May v. May,* 596 P.2d 536, 539 (Okla. 1979), this Court fashioned a formula for the determination of the enhancement in value of the separate property so as to

constitute jointly acquired property: "[a] Acquisition cost of the entire property plus cost of improvements made [for which the claiming party paid his proportionate share], [b] increased value due to inflationary factors or other marketplace forces producing appreciation in price levels [unrelated to efforts of labor] and [c] increase in value, if measurable, which is attributable to personal efforts of labor by the spouses." Applying this formula to the facts presented here, there was no acquisition cost as the stock was acquired by appellee as a gift from her father. Secondly, the evidence establishes that the enhanced value of Post Oak was due to two causes, to-wit: the inflationary increase in the price of oil and gas, and the increase in marketplace price of Entex stock. Lastly, appellant has no interest in the appreciation as there is no measurable increase in value of the stock that is attributable purely to his efforts, skill, and financial commitments. As previously noted, the evidence discloses that Post Oak, under appellant's management, actually experienced a decline of approximately 40% in oil and gas reserves and the only years in which the company operated at a gain were directly attributed to the liquidation of assets, the Entex stock sales transactions in 1977 and 1979. Two of the major assets of Post Oak, the McClure Lease and the partnership interest in Broadway Associates, were removed from the company and transferred to appellant and were determined to be marital property subject to property division by the trial court. The trial court aptly found that appellant's use of appellee's separate equity ownership in Post Oak, coupled with his skill and efforts, increased the marital estate to a substantial size. Appellant's removal of "the fruits of his efforts," the McClure Lease and Broadway Associates, from Post Oak to his own name, left Post Oak in no better position than he found it.

In the case of *Longmire v. Longmire,* 376 P.2d 273 (Okla.1962), substantially the same facts as now alleged were present. There, the wife acquired by inheritance during marriage an interest in oil interest

and oil production. The husband undertook the management and investment of the wife's funds in which she had little control or say and her husband ignored or overrode any objections she did interpose. The standard of living of the couple increased appreciably. This Court upheld the trial court's determination that the property was not jointly acquired property and that the wife's separate estate was not enhanced by the money or efforts of her husband. The rationale utilized to justify this result was that the determination of the issue as to separate ownership of the property acquired during marriage is dependent upon the original source of all property. The Court relied upon the case of *Spencer v. Spencer*, 199 Okl. 133, 184 P.2d 761, 762 (1947). Here, the stock came to appellee by gift; hence, the original source of the stock was appellee's father. The evidence establishes that appellee's father intended to give the Post Oak stock to appellee only, and not jointly to appellee and appellant. When Mr. Abernathy formed the corporation he gave one-third of the stock to each of his two children and retained the remaining one-third. It is obvious that his intent was to keep the ownership of Post Oak in his immediate family. Treasury stock was available to appellant for purchase in his own name after the redemption of the son's shares and the reorganization of the company. However, at no time did he so purchase any stock.

■ Appellant at no time has had a vested interest in the equity ownership of Post Oak because the 2,400 shares of Post Oak common stock were never in his name either jointly or individually, nor was it the intent of Mr. Abernathy to give said stock to appellant. Appellant was like any other officer of a corporation who does not own company stock. When the corporation's value increases the corporate officers do not have a vested interest in the company stock by virtue of their contribution of skills and efforts.

■ Appellant additionally briefs the contention that the stock itself lost its character as appellee's separate property as

distinguished from merely a claim in an interest in the appreciation of the stock. Appellant contends that *Umber v. Umber*, 591 P.2d 299 (Okla.1979), applies to the present case. The factor which distinguishes the two cases and mandates the conclusion that her separate property did not change its character is that in *Umber*, separate funds were commingled so as to lose its character as separate property. This single fact differentiates *Umber* from the case at hand. In this case we are not dealing with commingled property and, hence, *Umber* does not apply to the factual situation here examined.

The trial court correctly found that appellant does not have an ownership in the equity of Post Oak. Appellant suggests that we should recognize that he has an interest in Post Oak because he created said interest by his guaranty and indemnity of debt which allowed Post Oak to acquire additional Entex stock and redeem Post Oak common stock. Appellant cites the cases of *DuBoise v. DuBoise*, 418 P.2d 924 (Okla.1966) and *Haynes v. Haynes*, 197 Okl. 221, 169 P.2d 563 (1946) for the proposition that this Court has held that paying off the indebtedness of the separate property of a spouse entitles a spouse to an interest in the entire property, and hence, his contention would necessarily follow. *DuBoise* simply does not support this proposition. That case involved a controversy over the trial court's equal distribution of the homestead which had been acquired by gift from the wife's father to the husband and wife jointly during marriage. Other property deeded to the wife by her father was awarded to her as separate property and was uncontested.

In *Haynes*, this Court affirmed the trial court's finding that real property acquired by the wife by inheritance was not separate property within the meaning of 12 O.S.1981 § 1278, notwithstanding that nominal title was in the wife only. The evidence established that the husband "had made valuable contributions from his own funds toward the preservation, improvement and redemption of the land, to prevent fore-

closure and to reduce outstanding indebtedness." 169 P.2d at 565. The husband was awarded one-fourth interest in the property subject to one-fourth of the remaining indebtedness.

The facts presented herein are distinguishable from those in *Haynes*. Here, appellant never contributed any funds to Post Oak or purchased any stock. Under appellant's management, the reserves of Post Oak were not preserved. To the contrary, they decreased during appellant's management. The valuable improvements due to his efforts, the McClure Lease and Broadway Associates, were transferred out of Post Oak and into his individual name.

■ The strength of appellant's case then, if any, becomes his personal guaranty and indemnity. Appellant alleges that during fiscal year 1974–1975, he personally guaranteed a loan in which proceeds went to buy 15,900 shares of Entex stock on the open market to replace the 15,000 shares exchanged for appellee's brother's 2,400 shares of common stock in Post Oak. Appellant alleges that the 15,900 shares of Entex stock increased to 95,400 of the presently owned shares for a gross value at the time of trial of $1,300,600. He urges that the cost of the acquisition of the Entex stock was $273,428, resulting in a net enhancement of the company in the amount of $1,027,172 ($1,300,600—$273,428) which was occasioned directly by appellant's guaranty. He further asserts that both parties agreed to personally guarantee the payment of the new preferred stock issued to Mr. Abernathy when he cashed in his 5,200 shares of common stock. Appellant argues that his personal indemnity was required before Mr. Abernathy would make the stock transfer. He, thus, argues that the remaining 76% ownership equity in Post Oak was acquired by the joint efforts and indemnities of the parties. Additionally, he notes that the parties have unlimited guarantees of all of Post Oak's indebtedness at Southwestern Bank & Trust Company, Oklahoma City, Oklahoma.

Appellee rebutts appellant's argument by asserting that the audited and unaudited financial statements reflect that Post Oak has sufficient assets to discharge the liabilities indemnified and guaranteed by appellant without a creditor having to look to appellant for satisfaction of the debts. She further asserts the trial court required her to indemnify appellant from having to pay any of Post Oak's obligations arising from his personal guaranties made for debts of the company.

The parties do not cite any Oklahoma cases on the issue of the change in status of separate property due to the personal guaranty of the nonowning spouse. However, our independent research reveals a decision by the Kansas City District of the Missouri Court of Appeals which is to some extent relevant to the issue here. In *Stark v. Stark*, 539 S.W.2d 779, 782–83 (Mo.App. 1976), the court held that the entry into a joint mortgage transaction during marriage did not result in a change in ownership whereby farm property, which had been the husband's separate property, would become community property.

In the present case, the record shows Post Oak was the principal obligor on the notes and the primary source of repayment of the loans notwithstanding the personal guarantees by the parties. Also, the audited financial statements reflect that the notes payable were amply secured by Entex stock, land, accounts receivable and warehouse stock.

In our opinion, there is sufficient evidence to support the trial court's finding that the stock was appellee's separate property, notwithstanding that appellant personally guaranteed loans made to Post Oak for the purpose of purchasing additional Entex stock and the payment of new preferred stock in connection with the redemption of the common stock of Post Oak held by Mr. Abernathy and his son.

■ Appellant raises for the first time on appeal the issue of the imposition of an equitable trust. This issue was not raised by the pleadings nor in the petition in error, and will not be considered for that reason. *Stillwater Industrial Founda-*

*tion, Inc. v. State Board of Regents for Okla. Agricultural and Mechanical Colleges,* 541 P.2d 173, 178 (Okla.1975).

We find the judgment of the trial court should be AFFIRMED.

SIMMS, C.J., DOOLIN, V.C.J., and LAVENDER, HARGRAVE, ALMA WILSON and SUMMERS, JJ., concur.

OPALA and KAUGER, JJ., concur in result.