**In re the MARRIAGE OF Donna M. HERR and Donald Dean Herr.**

**Donna M. HERR, Petitioner-Appellant,**

v.

**Donald Dean HERR, Respondent-Respondent.**

No. 13640.

Missouri Court of Appeals,
Southern District,
Division Two.

Feb. 13, 1986.

Anita I. Rodarte, Sheldon Bernstein, Thayer, Bernstein & Bass, Kansas City, for petitioner-appellant.

Jerry E. Wells, Joseph W. Schoeberl, Joplin, for respondent-respondent.

MAUS, Judge.

In this dissolution proceeding, the judgment of the trial court included the following. The marriage was dissolved and two children were placed in joint custody, subject to several detailed provisions. An interest in a 200-acre farm and five cows were determined to be separate property of the husband. A residence was declared to be the separate property of the wife. The marital property was distributed and debts assigned. The wife asserts the trial court erred in determining the interest in the farm was separate property and in apportioning the marital property.

The following is an outline of the facts pertinent to the disposition of this appeal. Husband is a farmer. At the time of marriage in 1972, he was employed by his parents in the operation of their 200-acre dairy farm for $150 per week. After their marriage, the parties lived in a mobile home placed on that farm. The husband continued his employment until 1975.

In 1975, the husband's father was suffering from a terminal illness. On January 6, 1975, the farm was placed in the name of the father, the mother and the husband, "as joint tenants with right of survivorship and not as tenants in common and not as tenants by the entirety." The father and mother gave the son the dairy herd of 53 cattle and all the farm machinery and equipment. The husband assumed the operation of the farm as a sole proprietor. He employed his mother to aid in milking for $150 per week. The father died in July, 1978. The mother's employment terminated in 1979 when she remarried.

At that time she moved from the farm home. From that time until their separation, the parties lived in that home. The husband lived there at the time of trial. After the marriage the wife aided on the farm. She started working at a quick shop store in approximately 1975. In 1977 she was employed by the owner of several such stores. At the time of trial she was yet so employed. In her employment she kept running inventories on all the stores. Upon the basis of evidence which need not be here recited, the trial court found the wife had become infatuated with that owner. The parties separated in 1982. Upon separation, the wife spent two months with her parents in Arizona. She then returned, bought a residence in Joplin which was declared to be her separate property, and resumed her employment.

At the time of marriage, the husband owned a 40-acre farm and some machinery. Until the separation, the parties had a joint bank account. This account was used as the personal account of the parties. After

1975, it was used in the operation of the farm. The husband sold his 40-acre farm and its proceeds were deposited in this account. At the time the parents' farm was placed in the joint tenancy, it was subject to a deed of trust. There was a conflict in the evidence concerning the principal balance at that time. The trial court determined it to be $13,000 and that determination is supported by the evidence. After the transfer, the payments on the indebtedness were made by milk checks or from the joint account. In 1980, the indebtedness was refinanced. At the time of trial, the principal balance of the indebtedness was $12,855.

The trial court declared a one-half interest in the farm, five cows and certain farm machinery to be separate property of the husband. The residence in Joplin was determined to be separate property of the wife. The remainder of the property owned by the parties was found to be marital property. Upon considering the value of the marital property after deducting the marital debts, the trial court determined an equal division of the marital property was just. A vehicle and certain items of household goods were set apart in kind to each party. The balance of the marital property, principally consisting of cattle, farm machinery and equipment and supplies and crops, was awarded to the husband. The husband was charged with the payment of all the marital debts. The value of the property awarded to the wife was $7,690.00. The net value of the property awarded to the husband was $42,857.25. The difference was $35,167.25. To accomplish an equal division of the marital property, the wife was awarded a judgment against the husband in the amount of $17,-583.62, to be paid in installments and upon terms specified in that judgment.

In the trial court the wife contended the husband's interest in the farm was marital property but if not, that she was entitled to a charge against the husband's interest to the extent the same had been enhanced by marital funds and effort. She preserved this point in her initial brief. She stated the evidence established the "appellant is entitled to a monetary award or the imposition of a charge on the farm to the extent marital funds reduced the debt." She cited cases such as *Bishop v. Bishop*, 658 S.W.2d 512 (Mo.App.1983).

Before the wife's reply brief was filed, *Hoffmann v. Hoffmann*, 676 S.W.2d 817 (Mo. banc 1984) was decided. By her reply brief, the wife contends "[t]he trial court erred in refusing to award appellant her marital share of the 200 acre farm because substantial evidence at trial established that the source of funds used to acquire the farm were entirely marital." By that brief, the wife did not suggest remand. Instead, she argued the evidence established her interest and cited cases such as *Hoffmann v. Hoffmann*, supra, and *Harper v. Harper*, 294 Md. 54, 448 A.2d 916 (1982). However, upon oral argument the wife recommended remand of the case for the purpose of tracing the marital funds. During that argument she again relied upon *Hoffmann* and *Harper* and similar cases decided by the courts of Maine.

There is no question that the source of the funds rule as enunciated in *Hoffmann* is applicable to the disposition of this appeal. *Sumners v. Sumners*, 701 S.W.2d 720 (Mo.1985). However, the application of that rule does not necessarily require a remand.

The duty of this court is declared by Supreme Court Rule 84.14. "Unless justice otherwise requires, the court shall dispose finally of the case." Rule 84.14. Where there is a "dearth of evidence relative to the source of the funds rule," justice requires remand. *Sumners v. Sumners*, supra. That was also true in *Heilman v. Heilman*, 700 S.W.2d 843 (Mo. banc 1985). However, justice does not require a remand to permit a party to relitigate a factual issue that was before and decided by the trial court.

In this case, it is decisive that two issues, heretofore noted, were litigated in the trial court. The first was whether or not placing the farm in joint tenancy was the gift of an interest to the husband, or if he

acquired that interest as marital property. The second was whether or not the wife was entitled to a charge against the interest of the husband and, if so, the amount of that charge. The establishment of the lien the wife sought required the same tracing of marital funds as is required to establish a marital interest under the source of the funds rule. There has been no suggestion of any evidence made relevant by the application of the source of funds rule that was not relevant to the two issues that were litigated. Nor does the record indicate the presence of such evidence as was true in *Heilman.* The application of the legal principles of the source of the funds rule, which the wife argued in her reply brief, does not require the excessive expense of retrial. See *Hoffmann v. Hoffmann,* supra. The record is such that this court can apply the source of the funds rule and dispose of the case as directed by Rule 84.14.

As noted, the wife first contends that the entire interest of the husband in the farm is marital property. She argues the farm was transferred to the husband "in consideration of the agreement by Appellant and Respondent to assume the indebtedness on the farm." She then states that all payments upon the indebtedness made after the transfer were made from marital funds. Therefore, she concludes "the source of the funds used to acquire the property were entirely marital" and the husband's one-half interest was marital property.

■ The premise for that argument is not sound. "A gift is a voluntary transfer of property without consideration or compensation as an incentive or motive for the transaction." *Hull v. Hull,* 591 S.W.2d 376, 380 (Mo.App.1979). The conveyance was made when the father was terminally ill. The value of the farm was greatly in excess of the indebtedness secured by it. The recitation of the assumption of the existing indebtedness by the grantor parents and the husband provides no motive for the conveyance. Even had the wife assumed the indebtedness, the character of

the transaction would not thereby be altered. The assumption of indebtedness does not constitute acquisition by the use of marital funds. *Mothershed v. Mothershed,* 701 P.2d 405 (Okl.1985). Cf. *Stark v. Stark,* 539 S.W.2d 779 (Mo.App.1976). The trial court found the creation of the joint tenancy was in the nature of a testamentary gift and the husband's interest so created was his separate property. That finding does not erroneously apply the law, it is supported by the evidence and will not be disturbed. *Murphy v. Carron,* 536 S.W.2d 30 (Mo. banc 1976).

■ The wife next contends even if the husband's interest in the farm is separate property, under the source of the funds rule she is entitled to a "share of the appreciation in the value of the farm attributable to the period of time when the marital unit assumed the debt on the farm." This argument is seemingly also based upon the proposition that *all appreciation* of the husband's *separate property* interest in the farm occurring *during marriage is marital property.* That basis is also unsound. See generally, Krauskopf, Marital Property at Marriage Dissolution, 43 Mo.L.Rev. 157 (1978). The source of the funds rule does not cause the entire increase in value of separate property accruing during a marriage to be marital property irrespective of the source of that increase. *Hoffmann v. Hoffmann,* supra. A general guide limiting the recognition of such increase in value as marital property has received the following expression. "Enhancement in the value of a spouse's separate property which is caused by appreciation, inflation, changing economic conditions, or circumstances beyond the parties' control is not jointly acquired property unless the non-owning spouse can prove that his/her contributions were also a causal factor." *Templeton v. Templeton,* 656 P.2d 250, 252 (Okl.1982). This limitation is generally recognized under the judicially adopted source of the funds rule. *Bentley v. Bentley,* 84 Ill.2d 97, 49 Ill.Dec. 295, 417 N.E.2d 1309 (1981); *Van Newkirk v. Van Newkirk,* 212 Neb. 730, 325 N.W.2d

832 (1982); *Mothershed v. Mothershed*, supra; *Matter of Marriage of Elam*, 97 Wash.2d 811, 650 P.2d 213 (1982); *In re Marriage of Johnson*, 28 Wash.App. 574, 625 P.2d 720 (1981); *Plachta v. Plachta*, 118 Wis.2d 329, 348 N.W.2d 193 (1984).

As a corollary of that general limitation, it has been held that "[i]n order for a spouse to successfully prove that enhanced value is the result of joint endeavors, it must be shown that the net worth of the property increased during the marriage as the *direct result* of substantial contribution by the spouse of effort, skill or funds." *Templeton v. Templeton*, supra, at 252. (emphasis added) (footnotes omitted). The wife's performance of usual spousal duties was not such a substantial contribution of effort that caused an increase in the value of the separate property to be such a direct result. *Applegate v. Applegate*, 219 Neb. 532, 365 N.W.2d 394 (1985); *Jolis v. Jolis*, 111 Misc.2d 965, 446 N.Y.S.2d 138 (Sup.Ct. 1981), aff'd. 98 A.D.2d 692, 470 N.Y.S.2d 584 (1983); *In re Marriage of Johnson*, supra. Contra under specific statute, *Wood v. Wood*, 119 Misc.2d 1076, 465 N.Y. S.2d 475 (Sup.Ct.1983). In considering a similar contention in regard to enhanced corporate stock, it has been held,

> [t]he wife's contention that her services and efforts as a homemaker, traveling companion and entertainer were contributions made to the enhancement of the stock's value has no merit, as she made no substantial financial contributions to the business nor were her personal contributions sufficiently extensive to warrant additional compensation by sharing in the husband's separate property.

*Hoffmann v. Hoffmann*, supra, at 826. See generally, *Van Newkirk v. Van Newkirk*, supra; *Mothershed v. Mothershed*, supra. But see, *McLeod v. McLeod*, 74 N.C.App. 144, 327 S.E.2d 910 (1985); *Phillips v. Phillips*, 73 N.C.App. 68, 326 S.E.2d 57 (1985).

It is by statute provided, " 'marital property' means all property acquired by either spouse subsequent to the marriage except: ... (5) The increase in value of property

acquired *prior to the marriage.*" § 452.-330.2, RSMo Cum.Supp.1984 (emphasis added). Because the statutory limitation is directed only to property acquired prior to the marriage, it has been argued the general judicial limitation is not applicable to property acquired by gift, or devise or inheritance during marriage. The rule of statutory construction *"expressio unius est exclusio alterius"* is appropriately cited. This argument has been considered and rejected under the "inception of title" rule. *Hull v. Hull*, supra. Construing § 452.330 under the "source of funds rule," it is apparent that increase in value of separate property "acquired" by gift, inheritance or devise should remain separate property. *Templeton v. Templeton*, supra.

> Considering this intendment of the Act, we find nothing in it to support the argument that an appreciation in value of nonmarital property acquired by devise takes on the character of marital property. ... advancing the rule of construction *expressio unius est exclusio alterius* does not change our conclusion. Aids to statutory construction are designed to ascertain and not to override the intent of the legislature.

*In re Marriage of Komnick*, 84 Ill.2d 89, 49 Ill.Dec. 291, 294, 417 N.E.2d 1305, 1308 (1981), 24 A.L.R.4th 446. See also, *Plachta v. Plachta*, supra. This court holds the general judicial limitation upon the recognition of appreciation as marital property as enunciated in *Templeton* is applicable under the source of the funds rule to the increase in value of property acquired during marriage by gift, inheritance or devise.

However, after the creation of the joint tenancy, the payments upon the indebtedness secured by the farm were made from what the husband concedes to be marital funds. Whether such payments are viewed as partially acquiring the husband's interest or payments by which the value of that interest was increased, that use of marital funds results in a marital interest in the husband's otherwise separate property. Under the source of the funds rule,

when property is acquired by an expenditure of both nonmarital and marital property, the property is characterized as part nonmarital and part marital. Thus, a spouse contributing nonmarital property is entitled to an interest in the property in the ratio of the nonmarital investment to the total nonmarital and marital investment in the property. The remaining property is characterized as marital property and its value is subject to equitable distribution. Thus, the spouse who contributed nonmarital funds, and the marital unit that contributed marital funds each receive a proportionate and fair return on their investment.

*Harper v. Harper,* supra, 448 A.2d at 929. See also *McLeod v. McLeod,* supra.

In determining the extent of such a marital interest, it has been held the payment of interest on the purchase money indebtedness secured by otherwise separate property is not to be considered. "Since such expenditures do not increase the equity value of the property, they should not be considered in its division upon dissolution of marriage.... Moreover, if these items were considered to be part of the community's interest, fairness would also require that the community be charged for its use of the property." *In re Marriage of Moore,* 28 Cal.3d 366, 168 Cal.Rptr. 662, 665, 618 P.2d 208, 211 (in bank 1980). Cf. *Miracle v. Miracle,* 101 Wash.2d 137, 675 P.2d 1229 (1984). Contra *McHugh v. McHugh,* 108 Idaho 347, 699 P.2d 1361 (1985). It has been consistently held the extent of investment of marital funds to be considered under the source of the funds rule is limited by the reduction in the principal balance of such indebtedness. *Griffith v. Griffith,* 185 N.J.Super. 382, 448 A.2d 1035 (1982); Golden, Equitable Distribution of Property § 5.39 (1983). Cf. *Gapsch v. Gapsch,* 76 Idaho 44, 277 P.2d 278 (1954); *Colden v. Alexander,* 141 Tex. 134, 171 S.W.2d 328 (1943). Under the inception of title doctrine it was held "a charge may be imposed upon the separate property to the extent that separate funds of the other spouse or marital funds are expended to reduce the debt or

enhance the value of the asset in question." *Ravenscroft v. Ravenscroft,* 585 S.W.2d 270, 272 (Mo.App.1979). Also see *Bishop v. Bishop,* supra; *Rickelman v. Rickelman,* 625 S.W.2d 901 (Mo.App.1981).

■ There may be unusual circumstances under which the payment of interest on indebtedness secured by separate property by marital funds constitutes uncompensated use of those funds. However, the parties lived on the farm and the use of that farm contributed to those payments and the acquisition of other assets distributed as marital property. The rule expressed above is applicable.

■ If the property had been acquired by the investment of marital funds and nonmarital funds, the marital interest so acquired is to be determined by first calculating the ratio of marital investment to the total of the marital and nonmarital investment in the property. *Harper v. Harper,* supra. Cf. *Hall v. Hall,* 462 A.2d 1179 (Me.1983). As the husband's interest was acquired by gift, it is appropriate to consider the nonmarital investment as being the value of that interest at the time of the gift. The present value of the marital interest so acquired is determined by apportioning the appreciated value of the farm. *Hoffmann v. Hoffmann,* supra.

As stated in the wife's reply brief, the evidence established the value of the farm at the time of the creation of the joint tenancy at $300 per acre. There was conflicting evidence concerning that value at the time of the dissolution. The trial court found it to be $800 per acre and that determination is supported by the evidence. The amount of the indebtedness secured by the farm at each of those times has been previously stated.

The determination of the wife's interest involves the following figures:

| | |
|---|---:|
| Value of farm at time of gift | $ 60,000 |
| Indebtedness at time of gift | 13,000 |
| Non-marital contribution | 47,000 |
| Reduction of indebtedness due to marital funds | |
| Marital contribution | 145 |
| Total Marital and Non-marital contribution | 47,145 |

| | |
|---|---|
| Value of farm at time of dissolution | $160,000 |
| Indebtedness at time of dissolution | 12,855 |
| Equity | $147,145 |

The following is the determination of the value of the marital property interest in the farm according to the principle expressed in *Harper v. Harper,* supra, and the formula developed in detail in *Brandenburg v. Brandenburg,* 617 S.W.2d 871 (Ky.App. 1981). $145 divided by $47,145 × $147,145 equals $452.60. To avoid de minimus problems, this calculation does not take into consideration the husband has only a one-half interest in the farm. It assumes he will succeed to the whole.

This formula and its definitions are as follows:

$$\text{nonmarital property} = \frac{nmc}{tc} \times e$$

$$\text{marital property} = \frac{mc}{tc} \times e$$

Nonmarital contribution (nmc) is defined as the equity in the property at the time of marriage, plus any amount expended after marriage by either spouse from traceable nonmarital funds in the reduction of mortgage principal, and/or the value of improvements made to the property from such nonmarital funds.

Marital contribution (mc) is defined as the amount expended after marriage from other than nonmarital funds in the reduction of mortgage principal, plus the value of all improvements made to the property after marriage from other than nonmarital funds.

Total contribution (tc) is defined as the sum of nonmarital and marital contributions.

Equity (e) is defined as the equity in the property at the time of distribution. This may be either at the date of the decree of dissolution, or, if the property has been sold prior thereto and the proceeds may be properly traced, then the date of the sale shall be the time at which the equity is computed.

Golden, supra, § 5.40 pp. 144–145. Also see *Newman v. Newman,* 597 S.W.2d 137 (Ky.1980), and *Schweizer v. Schweizer,* 55 Md.App. 373, 462 A.2d 562 (1983), modified, 301 Md. 626, 484 A.2d 267 (1984).

The marital interest in the farm of $452.60 established by the source of the funds rule must be added to the marital property as determined and distributed by the trial court.

■ By a point in her initial brief, the wife contended the trial court erred in deducting the marital debts from the value of the marital property prior to making a just distribution of that property. She states she has no quarrel with the distribution of all farm property to the husband nor with the allocation of the marital debts to him. See *In re Marriage of Vanet,* 544 S.W.2d 236 (Mo.App.1976). She argues such error is established because substantially all of that indebtedness was incurred to finance farm operations. The trial court was entitled to consider that farm operations generated the marital property distributed in kind and would have to generate the cash payment to be made to the wife. It necessarily considered that the equal distribution of the value of the marital property determined without deducting such indebtedness would result in the distribution of $43,879 to the wife and $6,669 to the husband. The trial court did not err in considering and deducting the marital debts allocated to the husband in determining a just division of the value of the marital property. *In re Marriage of Smith,* 652 S.W.2d 743 (Mo. App.1983). Cf. *Schweizer v. Schweizer,* supra. See generally Golden, supra, § 6.31.

Finally, the wife contends the trial court erred in distributing the value of the marital property in equal shares because it did not properly consider the statutory factors prescribed by § 452.330. The assigned bases for this contention are ill founded. For example, she argues the trial court distributed the marital property 71% to the husband and 29% to her. The figures presented to support this premise are a valuation of the farm rejected by the trial court and do not take into account the allocation of the marital debts to the husband.

■ Further, she argues there is no substantive evidence to support the trial court's finding of the wife's misconduct.

The testimony of the husband included the fact he discovered a letter written by the wife to her employer which referred to seeing her employer lie in bed and being near to him. He further testified that upon confronting her with the letter, the wife's response was that she did nòt want to hurt him. The wife did not deny the letter or the response. The finding of the trial court was supported by the evidence.

The detailed recitations and findings of the trial court establish that it did consider the statutory factors. In distributing marital property, the trial court was vested with considerable discretion. *Dardick v. Dardick*, 670 S.W.2d 865 (Mo. banc 1984). The wife does not establish the trial court abused that discretion by awarding her one half of the net value of the marital property. The judgment of the trial court must be modified to distribute the marital property interest of $452.60 as established under the source of the funds rule. That judgment is modified to provide the husband shall pay to the wife the sum of $17,809.92 ($17,583.62 awarded by that judgment plus $226.30) in the installments and upon the terms provided by that judgment. As so modified, the judgment of the trial court is affirmed.

PREWITT, C.J., HOGAN, P.J., and CROW, J., concur.