**Sharon Ann WINTER,**
**Petitioner-Respondent,**

v.

**David H. WINTER,**
**Respondent-Appellant.**

Nos. 48186, 48575.

Missouri Court of Appeals,
Eastern District,
Division Four.

April 22, 1986.

Richard A. Stockenberg, St. Louis, for respondent-appellant.

Edward C. Vancil, Robert L. Striler, Clayton, for petitioner-respondent.

SNYDER, Judge.

David H. Winter appeals from those portions of the trial court's amended decree of dissolution which award child custody to Sharon A. Winter, divide marital property, and award attorney fees and other expenses to wife. The judgment is affirmed in part, reversed and remanded in part.

This court transferred the appeal, after opinion, to the Missouri Supreme Court because of a conflict with an opinion of the Southern District. This court's opinion held that the "source of funds" rule in determining the separate or marital status of property, as set forth in *Hoffmann v. Hoffmann,* 676 S.W.2d 817, 824–25 (Mo. banc 1984), should be applied prospectively. The Southern District opinion held that it should be applied retrospectively.

The Supreme Court, agreeing with the Southern District, determined that the "source of funds" rule should be applied retrospectively, *Sumners v. Sumners,* 701 S.W.2d 720, 725[2] (Mo. banc 1985), and retransferred the instant case to this court for consideration in light of its holdings in *Sumners* and *Heilman v. Heilman,* 700 S.W.2d 843, 844 (Mo. banc 1985).

Husband raises six points of error. The first asserts the award of primary custody of the parties' only child, a daughter, to wife is contrary to the daughter's best interest. The second challenges the award to wife of a marital interest in his separate property because the award is in excess of any marital funds used to reduce the indebtedness or to enhance its value. The third attacks the trial court's conclusion certain other property was marital rather than his separate property under Sec. 452.-330.2 RSMo. Cum.Supp.1984. The fourth contends the trial court's order that husband buy out wife's interests constitutes an unreasonable forced liquidation. The fifth point argues the trial court abused its discretion by ordering him to pay wife's attorney fees and costs. Husband's final point states the trial court abused its discretion in ordering husband pay certain deposition costs and accountants fees.

Husband also filed a separate appeal challenging the trial court's award of $2,750 to wife for her attorney's fees incurred during the pendency of this appeal. This court has consolidated husband's two appeals in the interest of judicial economy. The propriety of the award to wife of attorney's fees pendente lite is discussed in conjunction with husband's fifth point dealing with the issue of attorney's fees awarded wife under the dissolution decree.

The parties married on September 6, 1969; they separated on March 31, 1981. In 1971 a daughter, Jennifer, was born. During the marriage wife's two children by a previous marriage also resided with the couple. Husband earns $2,400 per month at his present employment. Wife, who has worked only since January 1981, earns $850 per month. Prior to January 1981, she remained at home to care for the children and the home.

At the time of their marriage, husband already owned a residence at Trails End Drive, purchased in 1968, and rental property at Jeffleigh Lane, purchased in 1965. Both these properties, however, were subject to encumbrances which were reduced during the marriage. Husband also owned shares of stock and money market funds. His net worth at the time of the marriage was $98,000. Wife's net worth was about $2,000. Husband invested in real estate and traded in securities during the marriage, using funds from the separately held assets he owned prior to the marriage.

The trial court's amended decree of dissolution awarded primary care and custody of the daughter to wife and ordered husband to pay $300 per month in child support. It also awarded wife $5,000 maintenance in gross, $13,074.84 in attorney's fees and $1,582.55 in costs. Each party was permitted to retain the personal property then in his or her possession.

In awarding the marital and separate property, the trial court awarded both the Trails End and Jeffleigh properties to husband as his separate property, subject to a marital interest in wife's favor of 49% in Trails End and 45% in Jeffleigh. Their interests were calculated as follows:

|  |  | Trails End |  | Jeffleigh |
|---|---|---|---|---|
| Trial Court Valuation |  | $85,000.00 |  | $70,000.00 |
| Encumbrance |  | 17,500.00 |  | 12,300.00 |
|  |  | $67,500.00 |  | $57,700.00 |
| Awarded to Wife | 49% | $33,075.00 | 45% | $25,965.00 |
| Husband | 51% | $34,425.00 | 55% | $31,375.00 |
| Total to Wife | $59,040.00 |  |  |  |
| Total to Husband | $66,160.00 |  |  |  |

The trial court then considered the effect of husband's reinvestment during the marriage of stocks and money market funds separately owned by him prior to the marriage into certain stocks and bonds worth $5,380 and real estate (referred to as the Highway W property) worth $25,000. The trial court concluded the various transactions had transformed the once separately held property into marital property. The court, accordingly, awarded wife a 50% interest in both these assets.

Other assets, including a $2,800 bond, a pension plan valued at $1,736, and insurance policies valued at $830 remained husband's separate property.

Finally, the trial court ordered husband to sell assets or otherwise make arrangements to satisfy the judgment within 90 days from the date of the decree.

This court reviews the trial court's decree under Rule 73.01, giving due regard to the opportunity of the trial court to judge the credibility of the witnesses. *In re Marriage of Carmack*, 550 S.W.2d 815, 817 (Mo.App.1977). The decree is to be sustained unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32[1–3] (Mo. banc 1976).

■ Husband's first assignment of error alleges the best interests of the daughter dictate that primary custody be granted to him. He asserts that he will provide her with access to superior educational facilities and a more secure environment, as well as love and affection.

It would serve no purpose to recite the evidence of alleged misconduct or the advantages to the child claimed by each party in vying for custody. Substantial evidence supports the trial court's award of custody to wife and it was not against the weight of the evidence. *Id.* The award of primary custody to wife is affirmed.

■ In husband's second point relied on he asserts the trial court erroneously applied the law by basing wife's share of the

marital interest in husband's separate properties at Trails End and Jeffleigh on a percentage of the entire equity in the properties rather than basing her interest only on the amount of marital funds or effort expended during the marriage to enhance the value of, or to reduce the indebtedness on, his separate properties. This court agrees.

The trial court found the Trails End and Jeffleigh properties to be husband's separate property but, because they were subject to encumbrances reduced during the marriage, awarded wife a 49% interest in the entire equity in Trails End and a 45% interest in the entire equity in Jeffleigh. Although the trial court followed the "inception of title" theory classifying property as separate or marital at the moment title is taken, *Busby v. Busby*, 669 S.W.2d 597, 599[5] (Mo.App.1984), the court apportioned a percentage of the value of the properties to wife in light of Missouri decisions recognizing the imposition of liens against separate property in favor of the marital unit when marital funds are expended to reduce a debt or enhance the value of the asset in question. *See e.g., Busby v. Busby,* 669 S.W.2d at 599; *Rickelman v. Rickelman,* 625 S.W.2d 901, 902 (Mo.App.1981).

The Missouri Supreme Court subsequently abandoned the "inception of title" theory and adopted the "source of funds" rule which dictates that the character of property is determined by the source of funds financing the purchase. *Hoffman v. Hoffman,* 676 S.W.2d at 824[7]. Under *Hoffman,* property is considered to be acquired as it is paid for so that a portion of separate property will be considered marital property to the extent the increase in value of the separate property is brought about during the marriage by marital funds or efforts. *Id.* [9].

The "source of funds" rule as announced in *Hoffman* is to be applied retrospectively to govern all cases not yet finally resolved by the entry of judgment and the extinction of all remedies by direct appeal. *Sumners,* 701 S.W.2d at 725; *Heilman,* 700 S.W.2d at 844. Therefore, *Hoffman* controls the in-

stant case and this court must, as directed by the supreme court, decide the appeal by applying the source of funds rule to the classification and division of the Trails End and Jeffleigh properties.

Husband's allegation of error has merit whether analyzed under the now abandoned "inception of title" rule or the newly-adopted "source of funds" rule. Whether a lien is established against separate property or whether a portion of the value of separate property is transformed into marital property because of the source of funds used to enhance the value, the question remains the propriety of awarding the wife a percentage of the entire equity, both the separate property portion and the marital property portion. The trial court erred in dividing and distributing as marital property the portion properly considered husband's separate property. The cause must be reversed and remanded because there is insufficient evidence to calculate the applicable values.

Wife adduced substantial evidence that marital funds and effort were expended to reduce the debt on the Trails End and Jeffleigh properties and to enhance their values. Funds from marital joint bank accounts paid in part the mortgage payments. During the marriage, four rooms, an above ground pool, and a cement driveway were added to Trails End. The wife testified she painted rooms to save money, but the record is bereft of probative evidence of the value of the improvements except for the added rooms. A $15,000 loan was taken out and payments on the loan made from marital funds, but the amount of the payments and the balance due on the loan does not appear in the record.

Wife cites *Stapleton v. Stapleton,* 637 S.W.2d 210, 211[1] (Mo.App.1982) to support the trial court's judgment, emphasizing the mention of physical efforts in that case. In *Stapleton* this court said: "The trial court, when allocating marital assets, may consider physical efforts ... expended upon separate property to reduce a mortgage or to make improvements." 637 S.W.2d at 211[1]. Here, however, no evi-

dence establishes the value of the wife's efforts in enhancing the value of the separate property, and purely maintenance and repair activities do not enhance the value of real property for purposes of separate or marital property determinations.

The encumbrances on Trails End had been reduced by $7,500 and the encumbrance on Jeffleigh by $10,500 between the times of their acquisitions and of the trial. Payments on all the encumbrances, however, had been made before the marriage, and the amounts of these pre-marriage payments were not in evidence. The amounts of the payments made during the marriage from marital funds were also not in evidence.

To the extent the Trails End and Jeffleigh properties were paid for or appreciated in value during the parties' marriage as a direct result of a substantial contribution in effort, skill, or funds by the wife, a portion of the properties' ultimate values is marital and subject to equitable division between the parties. The remainder is non-marital and properly set aside to husband as his separate property.

■ In order to accomplish a proper division under the "source of funds" rule, it is necessary to know the values of the properties at the time of the marriage, the values at the time of the hearing and the source of funds responsible for any increases in value. The exact amount of the increases in the values of the Trails End and Jeffleigh properties is not calculable from the present record. Therefore, the judgment with respect to the division of property must be reversed and remanded for a determination of the source of funds responsible for the increases in value of the Trails End and Jeffleigh properties during the marriage. The trial court shall then set apart to the husband the value of his separate, non-marital contribution and divide equitably the value of the newly determined marital portion between the parties in accordance with the statutory factors of Section 452.330.1 RSMo.Cum.Supp.1984.

The value of the separate property shall be a fraction of the equity at the time of the trial, the numerator of the fraction being the value of the property on date of the marriage plus the enhancements, if any, paid for with husband's separate funds, and the denominator being the total of the marital and non-marital contributions. *See Herr v. Herr*, 705 S.W.2d 619, 624 (Mo.App.S.D.1986).

The value of marital property shall be a fraction of the equity at the time of trial, the numerator of the fraction being the marital contribution and the denominator being the total of the marital and non-marital contributions. *Id.* The thorough analysis by Judge Almon Maus of the Southern District in *Herr* provides an excellent guideline for the use of this formula in calculating the values of the separate and marital portions of property having both a separate and marital character under the source of funds rule.

The amounts of interest paid on the encumbrances on the separate property shall not be considered as an enhancement of the values of the property during the marriage in the absence of unusual circumstances which would justify consideration of the interest payments as an enhancement. *Id.,* at 624.

■ Wife responds that factors set forth in Sec. 452.330.1 should be considered here in the setting apart of separate property. Wife's argument obviously misapplies the law. Section 452.330.1 clearly applies only to the division of marital, not separate, property.

Husband's third point challenges the trial court's conclusion that the Highway W property and certain stocks were marital property rather than his separate property. He asserts that throughout his marriage he kept his investment assets separate and distinct from marital assets. This point also has merit.

■ The key to the question whether the Highway W real estate is separate or marital property lies in the details of the earlier purchase of certain real property on Delmar Boulevard in St. Louis by the husband

and his brother. The Delmar property had been sold at the time of the hearing.

Both husband and his brother had originally signed the sales contract as purchasers of the Delmar property; wife was not a party to the contract. Each of the brothers paid $20,000 to the sellers. The $20,000 in cash which the husband put up for the sale came from the sale of stock or other investments which were his separate property. The brothers borrowed $37,000 to pay the balance of the $77,000 purchase price.

The lender required that wife's name be put on the warranty deed. Title was taken in the joint names of husband, wife, and his brother. Wife's name was placed on the initial warranty deed solely to comply with the lender's demand. No evidence existed that any marital funds were used to purchase the property.

Wife quitclaimed her interest in the Delmar property to husband in 1975 at the same time husband bought out his brother's one-half interest, again with cash raised by the sale of securities either owned by husband before the marriage, or purchased after the marriage with money from the sale of stock owned before the marriage. Husband subsequently purchased the Highway W property, as well as stocks and bonds valued at $5,380 with the proceeds from the sale of the Delmar property some time after his separation from wife.

Husband testified repeatedly that he kept all of his investments in his own name and separate from family money because of his estate plan, and for tax purposes. This testimony was born out literally by reams of documentary evidence of securities transactions carried on with many brokerage firms from the time of the marriage in 1969 to the time of the separation in 1981. Without exception the hundreds of documents were in husband's name only. Wife's name did not appear on any of them. There was no testimony by wife that she had an interest in any securities traded by husband, nor any evidence that any marital funds were used to purchase Delmar.

The evidence rebutted any presumption that the Delmar property was a gift or contribution to the marital estate. *Conrad v. Bowers*, 533 S.W.2d 614, 622[12, 13] (Mo. App.1975). The transfer was not intended as a provision for a settlement upon or as a gift to the other spouse. *Id.* The wife's knowledge of the details of the transaction and the interest in the property were minimal.

■ A spouse's name on a deed of trust or financing documents relating to a parcel of realty does not convert what would otherwise be separate property into marital property. *Stark v. Stark*, 539 S.W.2d 779, 782[3] (Mo.App.1976). Likewise, the warranty deed does not transmute husband's separate property into a marital interest subject to division in light of all the evidence to the contrary.

■ The evidence of other real estate and securities transactions by husband also presented clear evidence that husband did everything humanly possible to keep his assets separate from marital funds. Wife did not offer evidence to contest that the Delmar property was acquired with the separate funds of husband who traced the assets sold for the purchase as well as any individual could through voluminous transactions over a period of several years.

The assets sold for the Delmar purchase were either owned by husband before the marriage or exchanged for assets owned by husband before the marriage. The Highway W property was, therefore, separate property, having been purchased with funds derived from the sale of the separate property on Delmar.

In addition to the evidence tracing the Highway W property to separately held property, analysis of the transactions under Section 452.330.2(4) RSMo.Cum.Supp. 1984 also supports the conclusion that the Highway W real estate is husband's separate property. Section 452.330.2(4) RSMo. Cum.Supp.1984 provides that when property is excluded by valid agreement of the parties it becomes an exception to the rule that all property acquired by either spouse

subsequent to the marriage is marital property. The quitclaim deed by wife to husband reflects the parties' agreement that the Delmar property was to be husband's separate property. Wife testified that she signed the deed and that it was signed for purposes of husband's estate plan. The quitclaim deed showed an intent to transfer the property to husband's estate.

Appellate courts are admonished by *Murphy v. Carron*, 536 S.W.2d at 32, to exercise the power to set aside a decree on the ground that it is against the weight of evidence with caution and with a firm belief that the decree is wrong. This court reluctantly holds that the decree was against the weight of the evidence in finding the Delmar property, and hence the Highway W property, to be marital property.

■ Similarly, the stocks and bonds valued at $5,380 which the court found to be marital property and ordered to be divided equally must be held to be husband's separate property. No evidence showed any marital funds were used to purchase those stocks and bonds. The evidence clearly traced the stocks and bonds to funds derived from the sale of the Delmar property.

Husband's fourth point charges the trial court erred in ordering him to purchase his wife's marital interests within ninety days. It is unnecessary to discuss this point because the case is being remanded for a redetermination of the value of the parties' marital and separate interests.

■ In husband's fifth and sixth assignments of error, he argues that it was an abuse of discretion and error on the part of the trial court to award the wife: 1) attorney fees of over $14,000, including an amount for wife's attorney's fees and costs pending appeal; 2) deposition costs; and 3) accountant fees. Section 452.355 RSMo. 1978 authorizes the court to award reasonable attorney's fees after considering all relevant factors, including the financial resources of both parties. *Kieffer v. Kieffer*, 590 S.W.2d 915, 919 (Mo. banc 1979). Because the trial court must redesignate, re-

determine and redistribute the parties' property interests, this court reverses the award of attorney's fees, accountant's fees, and costs, including the fees awarded to wife pending appeal. *Weast v. Weast*, 655 S.W.2d 752, 757 [24, 25] (Mo.App.1983). After a redetermination of each party's property interests, the request for attorney's fees and costs may be reconsidered.

This court has reviewed the record, including the hundreds of exhibits and the transcript, and would prefer to conclude the case by rendering the final decision permitted by Rule 84.14. Unfortunately, the cause must be remanded because of the unanswered questions concerning what portions of the values of the Trails End and Jeffleigh properties are properly allocated as separate and marital property. The trial court may wish to redistribute the assets in light of the change in the status of the properties.

Rule 68.01 permits the appointment of a master by the circuit courts. This is another dissolution action in which a multitude of real estate and security transactions must be reviewed and considered in determining how assets are to be divided. Evidence of such transactions is difficult to adduce in a regular courtroom setting. It is an accounting problem to determine the financial facts of the myriad of transactions engaged in by the parties so that the legal effects of those transactions may be determined by the court.

The appointment of a master in such cases would be worth consideration by a trial court, always, of course, giving consideration to the added cost and the admonition in Rule 68.01(b) that reference to a master shall be an exception and made only upon a showing of exceptional circumstances. A master would be able to analyze the transactions in an unhurried fashion away from the pressures of the courtroom, and arrive at a more accurate determination of the relevant accounting facts.

The judgment is reversed and remanded for a redetermination of the status of, and division of, the parties' property interests consistent with this opinion. The award of

attorney fees and other expenses is also reversed to be redetermined in light of the changes in setting apart the separate property and in dividing the marital property. In all other respects the judgment is affirmed.

SMITH, P.J., and SATZ, J., concur.