Johnnie S. MEHRLE, Petitioner–
Appellant,

v.

Parker MEHRLE, Respondent–
Respondent.

No. 17149.

Missouri Court of Appeals,
Southern District,
Division Two.

July 10, 1991.

Motion for Rehearing or to Transfer
Denied Aug. 1, 1991.

887

William Clayton Vandivort, Dement, Vandivort and Dement, Sikeston, for petitioner-appellant.

James E. Reeves, Ward & Reeves, Caruthersville, for respondent-respondent.

FLANIGAN, Chief Judge.

This action for dissolution of marriage was instituted by Johnnie Mehrle against her husband Parker Mehrle. The parties, who will be referred to by their first names, were married on February 5, 1972. Johnnie was then 32 and Parker was 39. Each had been married before. Johnnie had three children by a prior marriage, and Parker had two children. This marriage was childless. The parties separated on May 18, 1989, and this action was filed on August 14, 1989.

Johnnie's petition requested, among other things, "that the court divide the marital property," and that the court award her maintenance. Parker's answer alleged that Johnnie was not entitled to maintenance or a division of marital property for the reason that the parties entered into a prenuptial contract on or about February 1, 1972, in which for a valuable consideration Johnnie "did expressly waive, relinquish and discharge all property rights and rights to alimony." Johnnie filed no reply to the answer.

Prior to the trial, Johnnie filed a request for findings of fact and conclusions of law. Johnnie also filed a motion to disqualify attorney James E. Reeves from representing Parker in this action. Attorney Reeves filed an affidavit in opposition to the motion to disqualify. The court denied the motion, and the case proceeded to trial.

The judgment of the trial court dissolved the marriage, classified certain property as marital property and divided it, awarded "$22,500 in cash" to Johnnie, denied an allowance of maintenance to Johnnie, and awarded Johnnie $2,000 for attorney's fees. The trial court found that by reason of the prenuptial contract it was not necessary to classify, as marital property or separate property, Parker's interest in a partnership known as Mehrle Farms or Parker's interest in a 160-acre farm. With respect to the last two items, the trial court found that each was without value by reason of encumbrances.

The trial court classified certain assets as marital property, made a finding as to the net value of each asset, and distributed them as follows:

Marital Property

| | Net Value | Awarded to Johnnie | Awarded to Parker |
|---|---|---|---|
| 1987 Ford | $1,618.80 | $1,618.80 | |
| 1977 Chevrolet | 300.00 | | $ 300.00 |
| Checking Account First State Bank of Caruthersville | 500.00 | | 500.00 |
| Barbecue Equipment | 1,000.00 | | 1,000.00 |
| State Farm life insurance policies | 11,294.58 | | 11,294.58 |
| Residence in Caruthersville | 91,344.00 | | 91,344.00 |
| | $106,057.38 | $1,618.80 | $104,438.58 |

Johnnie appeals. Prior to the trial, Johnnie and Parker agreed to a division of certain household goods. The trial court approved that agreement but made no mention of the value of those items. Neither side complains of that omission.

Johnnie's first point is that the trial court erred in awarding her "only $22,500 as her share of the marital property."

Division of the marital property is governed by § 452.330 [1] (as amended in 1988), which reads, in pertinent part:

"... [T]he court shall set apart to each spouse his nonmarital property and shall divide the marital property in such proportions as the court deems just after considering all relevant factors including:

(1) The economic circumstances of each spouse at the time the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to the spouse having custody of any children;

(2) The contribution of each spouse to the acquisition of the marital property, including the contribution of a spouse as homemaker;

(3) The value of the nonmarital property set apart to each spouse;

(4) The conduct of the parties during the marriage; ..."

Review of this court-tried case is governed by Rule 73.01(c), as construed in *Murphy v. Carron*, 536 S.W.2d 30, 32[1–3] (Mo. banc 1976). The judgment will be sustained unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. "Appellate courts should exercise the power to set aside a decree or judgment on the ground that it is 'against the weight of the evidence' with caution and with a firm belief that the decree or judgment is wrong." *Murphy*, at 32. Division of marital property lies in the sound discretion of the trial

court. *Colabianchi v. Colabianchi*, 646 S.W.2d 61, 64 (Mo. banc 1983), and this court must defer to the trial court's judgment unless the judgment is improper under the principles of *Murphy* or an abuse of discretion is shown. *Dardick v. Dardick*, 670 S.W.2d 865, 868 (Mo. banc 1984).

There is no significant factual dispute. Although the trial court made an express finding that the prenuptial contract was valid, it classified the items set forth in the table as marital property and stated that its division of the marital property was made in consideration of "the circumstances of the parties and the factors set forth in § 452.330." Parker did not appeal from the judgment. In this court, Parker makes no claim that the prenuptial agreement barred the classification of the listed items as marital property or distribution of them pursuant to the statutory factors. His brief says: "The prenuptial contract is not a real issue in this case." In the trial court, Parker's Exhibit A listed, as items of marital property, the same items so classified by the trial court.

■ The principal item of marital property is the residence in Caruthersville. After separation, Johnnie moved to Tennessee and offered no testimony that she desired to live in the residence. The trial court found that the residence had a value of $95,000 and was subject to two liens totaling $3,656. Parker testified that the house cost $94,500 and that $50,000 of that amount was paid by money given to Johnnie and Parker. Parker listed as a "marital debt" the sum of $49,463.02 which, he said, was due his "co-partner for excessive withdrawals during the marriage, used principally to pay on the residence." This court's review of the entire record leads it to reject that so-called "marital debt," so far as Johnnie is concerned. It finds no substantial evidence to support that statement.

1. Except where otherwise indicated, all references to statutes are to RSMo 1986, V.A.M.S., and all references to rules are to Missouri Rules of Court, V.A.M.R.

Prior to the marriage, Johnnie was employed as a waitress and bartender and continued that employment during some of the marriage. After the parties separated, Johnnie resumed similar work. Johnnie testified that during the marriage she helped Parker on the farm, fixed lunches for the men, hauled cotton trailers, and helped in the farming operation, for which she received no pay. Parker did not dispute that testimony.

Beginning in 1957 and continuing through the trial, Parker was a partner with his brother-in-law, Julian Boyd, in a farming partnership known as Mehrle Farms. The partnership farms 160 acres which the partners own, and also farms, on a "crop rent" basis, 1,665 acres owned by other people.

This court finds that each party contributed equally to the acquisition of the marital property. The trial court made the same finding except for the so-called marital debt which this court has rejected.

The only separate property set apart to Parker was his interest in the Mehrle Farms partnership and his interest in the 160–acre farm. The trial court found, and the evidence supports the finding, that by reason of encumbrances and liabilities neither of those items had any net value.

So far as the economic circumstances of each spouse is concerned, Johnnie is working as a bartender and Parker continues his activities in the farm partnership. Their respective incomes, for the years immediately prior to the trial, which was held in July 1990, were as follows:

|      | Parker | Johnnie |
|------|--------|---------|
| 1989 | $60,646.32 | (Did not file joint return) |
| 1988 | 27,485.54 | $9,187.55 |
| 1987 | 43,472.43 | 8,808.23 |
| 1986 | 33,216.07 | 8,281.62 |
| 1985 | 38,150.64 | 8,375.23 |

Neither party claimed that the other party was guilty of misconduct.

This court's review of the record leads to the conclusion that the marital property should be divided on an approximate $50/50$ basis.

The principal item of marital property is the residence. Several Missouri cases, primarily from the Western District, have expressed a reluctance, absent a compelling reason, to leave marital property, real or personal, vested in the parties as tenants in common. *Reed v. Reed*, 775 S.W.2d 326, 329[2] (Mo.App.1989); *True v. True*, 762 S.W.2d 489, 490[1, 2] (Mo.App.1988); *In re Marriage of Farquhar*, 719 S.W.2d 456, 458[3] (Mo.App.1986); *Branstetter v. Branstetter*, 637 S.W.2d 347, 350[2] (Mo. App.1982); *Corder v. Corder*, 546 S.W.2d 798, 805[11] (Mo.App.1977); *Davis v. Davis*, 544 S.W.2d 259, 264[7] (Mo.App.

1976). In *Davis* the court said, at 264: "[A] tenancy in common solution should be reserved for the unusual situation where the economics involved call for such a solution."

■ The trial court awarded to Parker all of the interest in the residence and awarded "$22,500 in cash to Johnnie." The practical difficulty with that award is that amount of cash is not present in the marital property.

This court revises the trial court's distribution of the marital property by deleting that portion of the judgment which awarded the residence to Parker and by deleting that portion of the judgment which awarded Johnnie $22,500. In lieu of the deleted portions, Johnnie is hereby awarded an undivided $56/100$ interest in the residence and Parker is awarded an undivided $44/100$ interest therein, said interests to be held as

tenants in common, subject, however, to Parker's option to buy Johnnie's interest in said residence for the sum of $50,000 in cash, said option to be exercised under the supervision of the trial court and in no event later than 90 days from the date of filing of this court's mandate in the trial court. The option shall terminate if not exercised within that period.

■ Johnnie's second point is that the trial court erred in excluding from the marital property Parker's interest in Mehrle Farms, a farming partnership. The trial court made this finding: "[Parker's] one-half interest in the co-partnership of Mehrle Farms has no value in excess of its liabilities." That finding is supported by the record. It is immaterial whether the trial court erred in excluding it from the list of marital property. See Rule 84.13(b). Johnnie's second point has no merit.

Johnnie's third point is that the trial court erred in refusing to disqualify James E. Reeves as Parker's attorney because "Reeves had represented both Parker and Johnnie in the preparation of the prenuptial agreement and should have been a key witness regarding its validity." On this appeal, Johnnie has made no complaint concerning the trial court's denial of maintenance. Johnnie's complaints concerning the marital property were considered in the trial court on the same basis as if the prenuptial agreement did not exist.

Although Parker's answer pleaded the existence of the prenuptial agreement, Parker made no attempt to invoke it as a factor in the issues concerning the marital property. Johnnie filed no reply alleging the illegality of the prenuptial agreement. In *State ex rel. Rope v. Borron*, 762 S.W.2d 427, 430 (Mo.App.1988), the court said:

"Both Rule 55.01 and 55.08 require that an affirmative avoidance or defense be pleaded in response to a preceding pleading. If Ida had not filed her reply asserting her affirmative defense of the invalidity of the agreement she would have waived that defense.... In the absence of a pleading asserting the invalidity of the agreement Ida could not have properly introduced evidence concerning its validity." (Citing authorities.)

Reeves appeared as Parker's attorney in September 1989. There were several court proceedings leading up to an agreement on May 15, 1990, that the case be set for trial. Johnnie did not file her motion to disqualify Mr. Reeves until May 17, 1990.

■ In response to Johnnie's motion to disqualify, Reeves filed an affidavit in which he stated that he did not represent Johnnie in connection with the prenuptial agreement or at any other time, and that he would not be a witness in the case. Johnnie testified in the trial that she did not employ Reeves to represent her in connection with the prenuptial agreement. Parker testified to similar effect. This court holds that the trial court did not err in denying Johnnie's motion to disqualify attorney Reeves. See *Terre Du Lac Prop. Owners' Ass'n v. Shrum*, 661 S.W.2d 45, 48[7–9] (Mo.App.1983); *Massey–Ferguson Credit Corp. v. Black*, 764 S.W.2d 137, 141[1] (Mo.App.1989).

In *Shrum*, 661 S.W.2d at 48, the court said:

"A motion to disqualify should be made with reasonable promptness after the party becomes aware of the conflict to prevent the party from using disqualification as a strategic tool to deprive his opponent of counsel of his choice after substantial preparation has been completed.... One who knowingly refrains from asserting the objection promptly is deemed to have waived the objection.... The purpose of the Canons of Ethics is to regulate the conduct of counsel, not a weapon to be used against the attorney's client." (Authorities cited.)

This court agrees with the foregoing statement. This court wants to make it clear that nothing in this record reflects any professional misconduct whatsoever on the part of Mr. Reeves, and that Johnnie's

motion to disqualify him was clearly without merit.

Except as reversed and modified in the respects previously mentioned in this opinion, the judgment is affirmed and the cause is remanded for further proceedings consistent with this opinion.

PARRISH, P.J., concurs.

SHRUM, J., concurs in part and dissents in part and files concurring and dissenting opinion.

SHRUM, Judge, concurring in part and dissenting in part.

I concur in the portion of the majority opinion regarding Johnnie's allegations of trial court error in excluding from marital property Parker's interest in Mehrle Farms and the refusal to disqualify Parker's attorney. I respectfully dissent from the majority's revision of the trial court's distribution of the marital property. My understanding of this court's standard of review, as stated in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976), compels this dissent.

I believe the following principles of law are relevant to an examination of the trial court's declaration and application of the law. The division made by a trial court of marital assets does not have to be an equal division; it merely has to be fair and equitable and take into account the statutory factors. *Hayes v. Hayes*, 792 S.W.2d 428, 431 (Mo.App.1990). This court has recognized that the factors enumerated in § 452.330.1, RSMo Cum.Supp.1990, are not exclusive. *In re Marriage of Harrison*, 657 S.W.2d 366, 370 (Mo.App.1983). Debts incurred during marriage to acquire marital property are marital debts. *In re Marriage of Welch*, 795 S.W.2d 640, 643–44 (Mo.App.1990). Marital debts are factors the trial court may consider in establishing a fair division of marital property. *Barth v. Barth*, 790 S.W.2d 246, 252 (Mo.App. 1990). Because the responsibility to fairly divide marital property lies primarily with

the trial court, we should not second-guess the trial court in its discharge of that important judicial function. *In re Marriage of Tate*, 689 S.W.2d 816, 818 (Mo.App.1985). We should interfere in a trial court's division of marital property "only if the division is so heavily and unduly weighted in favor of one party as to amount to an abuse of discretion." *In re Marriage of Jirik*, 783 S.W.2d 177, 181 (Mo.App.1990). I am not convinced the trial court abused its discretion in this case.

I recognize that a review of a trial court's declaration and application of the law relates closely to the evidence before that court. It is on this ground, the sufficiency of the evidence, that my disagreement with the majority originates. There is no dispute between Parker and Johnnie about the value of the residence (found by the trial court to be $95,000) or that $50,000 of the amount needed to acquire the home came from gifts from Parker's family to Parker and Johnnie. The parties' dispute arose over the characterization of the remaining funds. Johnnie contends those funds came from money earned by Parker in his farming partnership. Parker asserts the source of the money was excessive withdrawals from the partnership during the marriage and the withdrawals constituted marital debt. The trial court accepted Parker's marital debt characterization.

The majority states it finds no substantial evidence to support Parker's claim— and the trial court's finding—of marital debt. I disagree. Parker testified he withdrew more money—nearly $50,000 more—from his partnership than did his partner, and that he used the money to pay a portion of the cost of the marital home.

There appears no argument about Parker's competence to testify about his personal and business finances. The majority apparently finds his testimony is, nonetheless, not "substantial." A definition of *substantial evidence* is set forth in *Reproductive Health Services, Inc. v. Lee*, 660 S.W.2d 330, 335 (Mo.App.1983):

Substantial evidence is evidence which, if true, has probative force upon the issues,

i.e., evidence favoring facts which are such that reasonable men may differ as to whether it establishes them. It is evidence from which the trier or triers of fact reasonably could find the issues in harmony therewith; it is evidence of a character sufficiently substantial to warrant the trier of facts in finding from it the facts to establish which the evidence was introduced.

Another formulation of the *substantial evidence* definition appears in *Fujita v. Jeffries,* 714 S.W.2d 202, 206 (Mo.App.1986):

Substantial evidence is that which a reasonable mind would accept as sufficient to support a particular conclusion, granting all reasonable inferences which can be drawn from it, and deferring all issues of weight and credibility to the fact finder. Both parties to a contested matter can present substantial evidence, however only one can meet the preponderance of the evidence standard. The trier of fact draws inferences and decides which of the parties' positions are more probable, more credible and of greater weight.

I believe Parker's testimony constitutes substantial evidence about the existence of marital debt of nearly $50,000 on the residence.

Of course, the *Murphy v. Carron* standard of review would permit this court to revise the portion of the trial court's judgment that divided the marital property if the division were against the weight of the evidence. However, the phrase "weight of the evidence" means its weight in probative value, not the quantity or amount of evidence. The weight of the evidence is not determined by mathematics; it depends on its effect in inducing belief. *Johnson v. Gregg,* 807 S.W.2d 680, 685 (Mo.App.1991). Moreover, on appeal of a court-tried case, we give due regard to the trial court's opportunity to judge the credibility of the witnesses. *Id.* With these principles in mind, I do not share the majority's apparent "firm belief that the decree or judgment is wrong." *Murphy,* 536 S.W.2d at 32.

The majority also takes issue with the trial court's award of $22,500 in cash to Johnnie. The majority states, "The practical difficulty with that award is that amount of cash is not present in the marital property." The trial court determined the parties' equity in the residence to be $45,000 (fair market value of $95,000 less the indebtedness [rounded to $50,000] to Parker's partner) and awarded half the equity to Johnnie. I agree that the judgment does not clearly state that the $22,500 is to be paid Johnnie by Parker. I would remand with directions that the trial court clarify its judgment and order Parker to provide Johnnie with satisfactory security to ensure payment of the award.