See also 908 S.W.2d 860.

**In re the Marriage of Sheila D. McMILLIN and Robert E. McMillin.**

**Sheila D. McMILLIN, Respondent,**

v.

**Robert E. McMILLIN, Appellant.**

**Dwyla L. Deckard, Intervenor.**

No. 20669.

Missouri Court of Appeals,
Southern District,
Division Two.

Sept. 20, 1996.

Cheryl C. Lipscomb, Springfield, for appellant.

Deborah K. Dodge, Hall, Ansley, Rodgers & Condry, P.C., Springfield, for respondent.

CROW, Judge.

Robert E. McMillin ("Husband") appeals from a decree dissolving his marriage to Sheila D. McMillin ("Wife"). Husband maintains the trial court erred in setting apart to Wife, as nonmarital property, a professional corporation and a "one-half interest" in a commercial building.

This is Husband's second appeal to this court. His first appeal was dismissed because the decree was not final. *In re Marriage of McMillin,* 908 S.W.2d 860 (Mo.App. S.D.1995). Later in this opinion we refer to that decision as *"McMillin I."*

Wife, a certified public accountant, has been practicing that profession since 1978. She married Husband in September, 1990. At that time, she was practicing accounting with Marshall Decker, another certified public accountant.

The building in issue was built in 1984 by Wife and her partner, Decker. At that time, Wife was married to Jerry Harley. Wife testified, without objection or contradiction: "[Jerry Harley's] name was never on the title to that building. It was the intent that my interest in that be individual and separate from any marital interest."

The building is situated on Battlefield Road in Springfield. For convenience, we henceforth refer to it as "the Battlefield building."

In 1992 (two years after Wife married Husband), Wife's partner, Decker, decided to "leave public practice and ... sell his practice to a younger practitioner." Wife thereupon purchased Decker's interest in the Battlefield building. According to Wife, Decker and his spouse "signed quitclaim deeds over ... so the only remaining name on the title was mine."

To pay for Decker's interest, Wife "obtained financing through Boatmen's Bank." Husband signed the note and a deed of trust on the Battlefield building securing the note. Husband's testimony about the transaction included this:

"Q. ... You didn't contribute any funds to buy out Marshall Decker?

A. No, ma'am. No, ma'am.

. . . .

Q. [A]ll the money to buy out Mr. Decker as far as the building, his interest in the building, was managed through a loan at Boatmen's Bank?

A. Plus two other notes paid off at Metropolitan Bank, which was loans for equipment they had bought in the business.

. . . .

Q. And Sheila owned ... her interest in that building long before you got married?

A. Her half interest? Yes, Ma'am.

. . . . .

Q. Do you know what she paid Marshall Decker for his interest in the building?

A. I think it was something like $75,000 total, and that was with the substraction [sic] of her half of the loan that was at Metropolitan. There was a calculation made there, and it was something around 75 grand.

Q. But that was for his interest in equipment and his interest in the building, everything?

A. Yes, Ma'am."

Wife testified the Battlefield building is worth $150,000 and is encumbered by liens totaling $121,350.

Upon buying out Decker, Wife formed McMillin and Company, a professional corporation. For convenience, we henceforth refer to it as "McMPC." As we understand the evidence, Wife thereafter practiced accounting at the Battlefield building as a sole practitioner through McMPC.

Wife and Husband separated in February, 1994.

The evidence was heard by a family court commissioner. As recounted in *McMillin I*, the commissioner signed a "Decree Of Dissolution Of Marriage." 908 S.W.2d at 861. As explained *infra* in this opinion, a family court judge, following remand in *McMillin I*, adopted the commissioner's findings, added an amendment to the commissioner's "Decree," and entered the decree from which Husband brings the instant appeal.

The decree awards Wife *marital* property with an aggregate net value, according to the decree, of $67,421. The decree awards Husband *marital* property with an aggregate net value, according to the decree, of $70,740.35. Neither side challenges the values assigned by the decree to the marital property.

The decree sets apart to Wife, as her *nonmarital* property, the Battlefield building and McMPC.

■ Husband's first point relied on reads: "The [trial] court erred in determining that [McMPC] and one-half interest in [the Battlefield] building where [McMPC] carried out its business was Wife's non-marital property for the following reasons: the corporation was formed during the marriage; Husband worked in the business; Husband was secretary-treasurer and registered agent of the corporation; Husband was authorized on the business checking account and Husband was allocated one-half the profit or loss on the couple's tax returns prepared by Wife. One-half the building was purchased during the marriage and husband was obligated on the bank loan used to make the purchase."

The point is slightly misleading in asserting the trial court determined that a half interest in the Battlefield building was Wife's nonmarital property. As reported above, the trial court held the Battlefield building was entirely Wife's nonmarital property. We infer Husband's theory is that the interest Wife acquired in the Battlefield building when she and Decker built it is Wife's nonmarital property and the interest Wife acquired when she bought Decker out is marital property. For convenience, we henceforth refer to those interests, respectively, as Wife's "premarital half interest" and "postnuptial half interest."

The law pertinent to Husband's first point is § 452.330, RSMo 1994, which reads:

"1. . . . .

2. For purposes of sections 452.300 to 452.415 only, '**marital property**' means all property acquired by either spouse subsequent to the marriage except:

(1) Property acquired by gift, bequest, devise, or descent;

(2) Property acquired in exchange for property acquired prior to the marriage or in exchange for property acquired by gift, bequest, devise, or descent;

(3) Property acquired by a spouse after a decree of legal separation;

(4) Property excluded by valid written agreement of the parties; and

(5) The increase in value of property acquired prior to the marriage or pursuant to subdivisions (1) to (4) of this subsection, unless marital assets including labor, have contributed to such increases and then only to the extent of such contributions.

3. All property acquired by either spouse subsequent to the marriage and prior to a decree of ... dissolution of marriage is presumed to be marital property regardless of whether title is held individually or by the spouses in some form of coownership .... The presumption of marital property is overcome by a showing that the property was acquired by a method listed in subsection 2 of this section.

....

Applying that statute to the Battlefield building, we conclude that under subsection 2(5), Wife's premarital half interest is nonmarital property except to the extent that marital assets including labor have contributed to an increase in its value. Husband's first point and the argument following it make no contention that any marital assets contributed to any such increase, hence we hold Wife's premarital half interest is nonmarital property.

However, under subsection 3 of § 452.330, Wife's postnuptial half interest in the Battlefield building is presumed to be marital property even though title is held in her name alone. While that presumption may be overcome by a showing that her postnuptial half interest was acquired by a method listed in subsection 2 of § 452.330, there is no evidence that it was acquired by any such method.

We therefore hold the trial court erred in labeling Wife's entire interest in the Battlefield building as nonmarital property. The trial court should have classified Wife's postnuptial half interest as marital property.

In so holding, we do not ignore *Winter v. Winter*, 712 S.W.2d 423 (Mo.App. E.D.1986), cited by Wife. It is not controlling because the evidence there demonstrated that property acquired after the marriage was purchased by assets owned by one spouse before the marriage or by assets acquired in exchange for assets owned by that spouse before the marriage. *Id.* at 427–29. Here, Wife's postnuptial half interest in the Battlefield building was acquired by money borrowed by her and Husband during the marriage, not by assets owned by Wife before the marriage or by assets acquired by her in exchange for such assets.

■ However, the error in classifying Wife's postnuptial half interest in the Battlefield building as nonmarital property does not compel reversal. In *Mehrle v. Mehrle*, 813 S.W.2d 886 (Mo.App. S.D.1991), the wife claimed the trial court erred in treating an asset as the husband's nonmarital property instead of marital property. This court held that inasmuch as the asset had no value in excess of its encumbrances, the alleged misclassification was immaterial. *Id.* at 890[3].

Here, Wife asserts that at time of trial she had accumulated very little, if any, equity in her postnuptial half interest in the Battlefield building. Wife maintains the note payments to Boatmen's Bank were "essentially payments of interest."

Although Wife refers us to no evidence confirming that premise, Husband, as we have seen, does not claim that any marital assets contributed to an increase in the value of Wife's premarital half interest in the Battlefield building. That being so, it follows that no marital assets have contributed to an increase in the value of Wife's postnuptial half interest. That is because the Battlefield building is a single asset and any increase in the value of Wife's premarital half interest after acquisition of her postnuptial half interest would *a fortiori* increase the value of the postnuptial interest.

Even if we assume the note payments referred to by Wife were made from marital funds, that does not aid Husband. Using marital funds to pay interest which does not increase the equity value of property does not create a marital asset therein. *In re Marriage of Herr*, 705 S.W.2d 619, 624 (Mo. App. S.D.1986).

Husband cites no case holding that his liability on the note for the funds used to buy

Wife's postnuptial half interest in the Battlefield building entitles him to half (or any other fraction) of Wife's postnuptial half interest. Whether the trial court should have included in the decree a provision requiring Wife to save Husband harmless on the note is not an issue in this appeal.[1]

We therefore find no basis for reversal in Husband's complaint that the trial court should have classified Wife's postnuptial half interest in the Battlefield building as marital property. As there is no net value in the postnuptial half interest, the misclassification is inconsequential. *Mehrle,* 813 S.W.2d at 890[3].

We next address Husband's claim that the trial court should have classified McMPC as marital property. Husband bases his position on the following evidence.

Wife testified that Husband was employed by McMPC to "[enter] tax data from an organizer into a tax preparation program." He was "paid as an employee with withholding and as any other employee with the firm." Wife conceded that before the separation, Husband was secretary-treasurer of McMPC and its registered agent. However, avowed Wife, Husband was not a "stockholder" in McMPC, nor was he on the board of directors. Asked who could own stock in McMPC, Wife replied, "Only licensed certified public accountants." Wife asserted she is the sole shareholder.

Husband testified he was "on the bank account" of McMPC and could write checks. He also testified that a "tax return" prepared by Wife for McMPC showed "paid in capital" of $20,000.

In regard to the tax returns, Wife testified:

"[McMPC] has been in existence since 1992; and when you're trying to save a marriage, you'll do strange things. I gave [Husband] a K–1 out of [McMPC], but that was simply an ego building situation, and IRS isn't going to care since it's a joint return. The income is represented on the return."

Explaining the $20,000 figure regarding McMPC on the tax return about which Husband testified, Wife said:

"I don't believe I placed a value specifically on [McMPC]. I think what we're looking at there is the balance sheet that's attached to [McMPC's] tax return and what that consists of. The equity that is reflected there is the equipment that was transferred from Decker and McMillin into [McMPC] at the time that my former partner and I split up partnership, plus there was approximately ... $7,500 of cash that was distributed from Decker and McMillin and was re-deposited into [McMPC] as the opening cash balance. That's what accounts for the value in [McMPC]. There has been a decrease in equity in [McMPC] since the day it was incorporated."

■ Husband emphasizes that McMPC was incorporated during the marriage and he "paid taxes on his personal tax return on one-half the business profit." Citing § 452.330.2 (quoted *supra* ), Husband insists that McMPC is presumed to be marital property and the evidence did not establish any of the exceptions listed in the statute.

In response, Wife maintains that although McMPC was formed during the marriage, it was formed only because her partner, Decker, left the public practice of accounting, whereupon she formed McMPC to continue her practice of accounting in which she had been engaged since 1978. Wife argues that because her "business" as a certified public accountant was not acquired when McMPC was formed, but instead existed for twelve years before she married Husband, her business—her accounting practice—is nonmarital property.

Wife's argument, while ingenious, is unsound.

McMPC was incorporated during the marriage, evidently by Wife alone. It was consequently "acquired" by her during the marriage and is therefore, by definition, marital property. § 452.330.2.

1. A loan officer with Boatmen's Bank testified that if it was determined in the dissolution that the Battlefield building was Wife's "sole and separate property," the bank would release Husband from liability on the note.

■ However, there is no evidence that any marital assets were placed in McMPC when it was formed or thereafter. Wife testified—without contradiction by Husband—that the assets transferred to McMPC when it was formed were assets owned by her and her partner, Decker. She purchased Decker's interest in those assets by funds she (together with Husband) borrowed from Boatmen's Bank. Husband candidly admitted at trial that he contributed no funds to buy out Decker's interest.

There was no evidence that any marital assets or any of Husband's nonmarital assets were transferred to McMPC, nor was there any evidence that Husband contributed any labor to McMPC for which he was uncompensated and which increased the value of McMPC.

Accordingly, even though McMPC is, by definition, marital property, there is no evidence that any of its value is attributable to (a) any marital property, (b) any of Husband's separate property, or (c) any unpaid services rendered by Husband. Furthermore, Wife testified—again without contradiction by Husband—that there had been "a decrease in equity" in McMPC since the day it was incorporated. We therefore hold that even though the trial court mislabeled McMPC as Wife's nonmarital property, the error is harmless in that there is no evidence to support an award to Husband of any marital property to offset the award of McMPC to Wife.

Finding no basis for reversal in Husband's first point, we turn to his second. As a preface, we note the commissioner, by agreement of Husband and Wife, allowed Dwyla L. Deckard to intervene in this action because Deckard claimed an interest in a corporation not yet mentioned. That corporation is referred to in the transcript as "MC, S., and G Corporation." For convenience, we henceforth refer to it as "MCS & G." MCS & G operates The Corner Lounge, a bar.

Husband's second point avers the trial court erred in not assigning values to (a) McMPC, (b) the Battlefield building, and (c) the interest, if any, of Deckard in MCS & G.

In *McMillin I*, this court pointed out that the commissioner's "Decree" did not dispose of Deckard's claim. 908 S.W.2d at 863 n. 6. As reported earlier in this opinion, after remand in *McMillin I*, a family court judge added an amendment to the commissioner's "Decree," and entered the decree from which Husband brings the instant appeal. The judge's amendment reads, in pertinent part:

"That the Court finds that the Intervenor ... has no ownership interest, nor has ever had an ownership interest, in the corporation [MCS & G], and is therefore not awarded any interest in said corporation."

Deckard did not appeal, and Husband assigns no error in the trial court's finding that Deckard has no interest in MCS & G.

The decree classifies MCS & G as marital property, assigns it a value of $7,755, and awards it to Husband.

■ Because the trial court awarded Deckard no interest in MCS & G, Deckard had no interest for the trial court to value. Consequently, Husband's complaint that the trial court failed to assign a value to Deckard's interest, if any, in MCS & G is meritless, if not frivolous.

■ The basis of Husband's complaint that the trial court erred in failing to assign values to McMPC and the Battlefield building is the admonition in § 452.330.1(3) that a trial court, in dividing marital property, shall consider the value of the nonmarital property set apart to each spouse. Husband argues that the trial court's failure to value McMPC and the Battlefield building makes it impossible, on appellate review, to determine whether the trial court abused its discretion in dividing the marital property.

While that might be true in some instances, it is not so here.

The value of the marital property awarded Husband is $70,740.35. Disregarding McMPC and Wife's postnuptial half interest in the Battlefield building, the value of the marital property awarded her is $67,421. As we have seen, Wife's uncontradicted testimony was that the "equity" in McMPC shown on the balance sheet attached to the tax

return represented the assets transferred from Decker and McMillin when she bought out Decker, which equity has decreased since McMPC was incorporated. The Battlefield building has a value in excess of encumbrances of approximately $28,650. However, as recounted earlier, Husband admitted he contributed no funds to buy Decker's interest in the building, and there is no evidence that its value was thereafter enhanced by any marital funds, any separate funds of Husband, or any uncompensated services performed by him.

That evidence enables us to determine, without values assigned by the trial court to McMPC and the Battlefield building, that the trial court did not abuse its discretion in dividing the marital property. Husband's second point is denied.

■ Husband's third (and final) point relied on reads:

"That the Family Court erred in that the statutory factors governing disposition of the marital property were not cited in the Decree."

The point violates the "wherein and why" requirement of Rule 84.04(d),[2] and presents nothing for review. *Thummel v. King,* 570 S.W.2d 679, 684–88 (Mo. banc 1978); *In re Marriage of Swofford,* 837 S.W.2d 560, 562 (Mo.App. S.D.1992).

Exercising our authority under Rule 84.14, we modify the decree by classifying McMPC and Wife's postnuptial half interest in the Battlefield building as marital property. We affirm the trial court's award of those items to Wife. In all other respects, the decree is affirmed.

MONTGOMERY, C.J., and GEORGE M. FLANIGAN, Senior Judge, concur.