Calvin Frank SCHNEIDER,
Plaintiff–Appellant,

v.

Martha Jane SCHNEIDER,
Defendant–Respondent.

No. 59646.

Missouri Court of Appeals,
Eastern District,
Division Three.

Feb. 18, 1992.

---

P. Dennis Barks, Hermann, for plaintiff-appellant.

Walter D. McQuie, Jr., Montgomery City, for defendant-respondent.

STEPHAN, Judge.

Calvin Frank Schneider appeals from the trial court's judgment dissolving his marriage to Martha Jane Schneider. We affirm.

Calvin and Martha were married on August 26, 1982. That same day, the parties executed an "Antenuptial Agreement Barring Marital Rights–Jointure" ("the Agreement"). Pursuant to this Agreement, Martha agreed to contribute to the marital property: (1) all Social Security payments that she received; (2) all payments that she received from the State of Missouri's retired teachers pension program; (3) four lots located on the Gasconade River; (4) all furniture and household items at her Gasconade County house; and (5) all income received during the marriage. Additionally, Martha granted Calvin a life estate in her house and three acres, in the event that Martha predeceased Calvin, for so long as Calvin remained unmarried and continued to live on the premises. Calvin agreed to contribute to the marital property: (1) all increase in cattle over the present 62 head of breeding cows and two bulls; (2) all income received from farming and other business operations less payments on a $3,000 note in favor of First Missouri Bank of Gasconade County at Hermann; (3) real estate at 10744 Lacklink Avenue, St. Louis, Missouri; (4) real estate at Lake Sherwood; (5) all earned income received during the marriage other than income previously described; (6) all Social Security, governmental and private incomes when received; and (7) all furniture in St. Louis, Missouri.

Additionally, the parties agreed that certain property would remain separate property. Specifically, Martha's separate prop-

erty included: (1) real estate aggregating approximately 155 acres; and (2) proceeds from a note in the original sum of $50,-915.00, with 12% interest per annum, totaling a $554.54 monthly payment (principal plus interest). Calvin's separate property included: (1) real estate aggregating approximately 271 acres; (2) a Lake Sherwood lot; (3) a house at 10744 Lacklink, St. Louis County, Missouri; (4) farm equipment; (5) 62 cows; (6) 2 bulls; and (7) property from the Emma Schneider estate.

Despite the provisions of the Agreement, Calvin did not contribute all of his earned income, all of the proceeds of the sale of the Lacklink house, all of his Social Security income or all of his IRA income to the marital property. As a result, the parties executed a writing modifying their Agreement. This modification, which both parties signed, states: "[b]ecause parts of the pre-nuptial agreement, after 4 years, have become obsolete, we agreed that Calvin is releasing the 4 river lots, the life estate that included the house and three acres, the furniture (except Calvin's bedroom set, desk, metal cabinet and safe). Also, we have agreed to share all of the cattle."

The parties separated on March 3, 1989. Six days later, Calvin filed a petition, in the Circuit Court of Gasconade County, Missouri, for Dissolution of Marriage. Martha filed her answer to the petition on May 9, 1989. Subsequently, on October 12, 1989, Calvin filed his first amended petition. The case proceeded to trial on July 12, 1990. The trial court entered its Memorandum of Judgment on December 18, 1990. On January 17, 1991, Calvin filed a Motion to Vacate, Amend or Modify Judgment or for New Trial. The next day, the trial court, on its own motion, amended its judgment. Specifically, the trial court corrected Exhibit C, Calvin Schneider's Marital Property and Debts, to reflect that Calvin had not sold $27,486.00 of cattle post-separation, but instead had sold $14,845.50 of cattle during 1989 and $6,552.00 of cattle during 1990, for a total of $21,397.50. The trial court specified that although the amendment would change the subtotal and net value, all other provisions of the judgment would remain unchanged. On January 28,

1991, Calvin filed his Notice of Appeal. We will recite additional facts, as needed, in the remainder of the opinion.

■ Review of this court-tried case is governed by Rule 73.01 and the well-known principles presented in *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). Therefore, the decision of the trial court must be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id.* at 32. Although we will address each of Calvin's points, we will do so in an order different from that adopted by either party. In so doing, however, we will label each point as Calvin did in his briefs.

■ Calvin's point II is that the trial court erred in failing to divide the marital property in accordance with the Agreement and in determining that the modification thereof was valid and enforceable since the modification was not supported by consideration, was not based on a full disclosure of the assets of each party and was unconscionable. Neither party cited, nor were we able to find, any Missouri case law which addresses the issue of whether antenuptial contracts may be modified. We now conclude that they may. Moreover, general contract principles shall apply to antenuptial modifications. The modification of any contract constitutes the making of a new contract and must be supported by consideration. *Gross v. Diehl Specialties Intern.*, 776 S.W.2d 879, 883 (Mo.App. 1989). Where a contract has not been fully performed at the time of the new agreement, the substitution of a new provision, resulting in a modification of the obligations on both sides, for a provision in the old contract still unperformed, is sufficient consideration for the new contract. *Id.* While consideration may consist of either a detriment to the promisee or a benefit to the promisor, a promise to carry out an already existing contractual duty does not constitute consideration. *Id.*

■ Here, the trial court did not err in concluding that Calvin and Martha could, upon sufficient consideration, modify their

Agreement. Moreover, the trial court did not err in concluding that there was sufficient consideration to support the modification. The Agreement was not fully performed at the time of the modification since Calvin did not contribute all of his earned income, the proceeds of the sale of the Lacklink house, his Social Security income or his IRA income to the marital property. Calvin and Martha, therefore, mutually agreed that Calvin would release the 4 river lots, the life estate that included the home and three acres, and the furniture, subject to certain exceptions. Additionally, Calvin and Martha agreed to share *all* of the cattle. The substitution of these provisions resulted in a modification of obligations on both sides. Pursuant to the new provisions, the parties understood that Calvin was freed from the obligation to contribute the Lacklink proceeds into the marital property. In exchange for this modification, Calvin became obligated to share all of the cattle with Martha. Similarly, Martha gave up the right to sue under the Agreement for the proceeds of the Lacklink property. In exchange for this modification, Martha received the release of the 4 river lots, the life estate that included the home and three acres, the furniture, subject to certain exceptions, and the right to share all of the cattle. Thus, the substitution of the new provisions, resulting in a modification of both Calvin's and Martha's obligations, for a provision in the old contract still unperformed (Calvin's obligation to contribute the proceeds of the Lacklink property), is sufficient consideration for the modification.

■ We have reviewed Calvin's allegations that the modification was not based on a full disclosure of each party's assets. We find no evidence to support this allegation. We have also reviewed Calvin's allegation that the modification is unconscionable. We disagree. Calvin's point II is, therefore, denied.

■ Calvin's point I(A) is that the trial court erred in its classification of marital property and in the division of the same because the trial court failed to consider that the increase in value of Martha's real estate during the marriage was the result of the expenditure of both marital funds and Calvin's services. Calvin cites no evidence that marital funds were used to increase the value of Martha's real estate. Since Calvin provides no evidence to support his allegation, we deny him any relief.

■ Turning to Calvin's expediture of services argument, Section 452.330.2(5), RSMo Supp. 1988, provides that the increase in value of property acquired prior to the marriage is separate property unless marital assets, including labor, have contributed to such increases. In such cases, the property is marital, but only to the extent of the contributions. Enhancement in the value of a spouse's separate property that is caused by appreciation, inflation, changing economic conditions, or circumstances beyond the parties' control is not jointly acquired property unless the non-owning spouse can prove that his contributions were also a causal factor. *Barth v. Barth*, 790 S.W.2d 246, 250 (Mo.App.1990). In order for a spouse to successfully prove that enhanced value is the result of joint endeavors, it must be shown that the net worth of the property increased during the marriage as the *direct result* of substantial contribution by the spouse of effort, skill or funds. *In re Marriage of Herr*, 705 S.W.2d 619, 623 (Mo.App.1986). The performance of usual spousal duties is not such a substantial contribution of effort as to cause an increase in the value of separate property to be marital property. *In re Marriage of Schatz*, 768 S.W.2d 607, 610 (Mo.App.1989).

■ Here, it is manifest that Martha's property substantially appreciated in value. Martha valued said real estate at $125,000 at the time of the parties' marriage. She valued this same real estate at $175,000 at the time of the hearing. Martha testified that the value of her farm increased as the direct result of using the proceeds of the non-marital debt due her to finance improvements to her house and real estate. She also testified that property values had increased due to inflation.

Calvin, on the other hand, testified that he performed $6,125 worth of "services"

(fifteen in total) that led to an increase in the value of Martha's property. However, on cross-examination, Calvin testified that at least two of these "services" were completed before the parties' marriage. Moreover, Martha subsequently testified that the most expensive "service", totaling $3,500, was performed before the parties' marriage.

When contradictory testimony is presented to the trial court, we give deference to the trial judge, who is in a better position to assess the credibility of the witnesses. *In re Marriage of Stuart*, 805 S.W.2d 309, 312 (Mo.App.1991). The trial judge could have believed that Calvin performed the majority of the "services" prior to the parties' marriage. The increase in value of Martha's property, to the extent of those contributions, would, therefore, not constitute marital property. Moreover, the trial court could properly conclude that Calvin failed to show that Martha's property value increased during the marriage as a direct result of substantial contribution of Calvin's effort, but rather was the performance of usual spousal duties. Since the trial court's decision is supported by substantial evidence, is not against the weight of the evidence, and neither erroneously declares or applies the law, it is affirmed.

Calvin's point I(B) is that the trial court erred when, after decreasing the total amount of proceeds that Calvin received from selling cattle in its amended judgment, it failed to decrease the amount it had previously ordered Calvin to pay Martha in its judgment. A trial court is vested with considerable discretion in dividing marital property. *In re Marriage of Dempster*, 809 S.W.2d 450, 457 (Mo.App. 1991). We will only interfere if the division is so heavily and unduly weighted in favor of one party as to amount to an abuse of discretion. *Id.* We presume the correctness of the order prescribing division. *Bixler v. Bixler*, 810 S.W.2d 95, 100 (Mo.App. 1991). Moreover, the party challenging the division has the burden of overcoming this presumption. *Id.*

Here, in the original judgment, the trial court awarded Calvin 52% of the marital property, while it awarded Martha 48%. The amended judgment resulted in just the opposite—the trial court awarded Calvin 48% of the marital property, while it awarded Martha 52%. We find no undue weight favoring Martha. Calvin's point I(B) is, therefore, denied.

Calvin's point I(C) is that the trial court improperly: (1) declared certain proceeds from the sale of cattle to be marital property; and (2) ordered division of the same, even though Calvin legitimately expended such proceeds for farm-related living expenses, including: hay, veterinary bills, feed, gas, fuel, repairs and miscellaneous expenses, and thus the proceeds did not exist at the time of the hearing. Calvin, citing *Fornachon v. Fornachon*, 748 S.W.2d 705, 708 (Mo.App.1988), claims because the money was used for living expenses, it was improper for the court to treat the money the way that it did. We disagree.

Although Calvin cites an appropriate rule of law, the ironclad tone of this rule is tempered by the following two rules. First, where a party has intentionally secreted or squandered an asset in anticipation of divorce, the court may hold that party liable for the amount by awarding it to him. *S.L.J. v. R.J.*, 778 S.W.2d 239, 244 (Mo.App.1989). This effectively reduces the party's property award by the squandered amount. *Id.* Second, the trial court is free to disbelieve witness' testimony or "vague accounting" that they used expended money for living expenses. *Dove v. Dove*, 773 S.W.2d 871, 874 (Mo.App.1989).

Here, the court could have found that Calvin secreted or squandered the proceeds from the sale of the cattle in anticipation of divorce. Calvin testified that he used approximately $8,400 to reduce the debt on his real estate. Moreover, Calvin testified that he spent money on hay, feed, veterinary bills, gas and fuel. However, with the exception of the sum spent on the real estate loan, Calvin failed to provide detailed figures with regard to what constituted his expenditures. Thus, we cannot conclude that the trial court erred in failing

to believe Calvin's vague testimony that he used expended money for living expenses. Calvin's point I(C) is, therefore, denied.

Calvin's point I(D) is that the trial court: (1) improperly treated the entire amount of the proceeds from the sale of cattle as marital property; and (2) failed to recognize that a portion thereof was attributable to labor expended and expenses incurred in the production of income. Initially, we note that Rule 84.04(d) provides: "points relied on shall state briefly and concisely what actions or rulings of the court are sought to be reviewed and wherein and why they are claimed to be erroneous, *with citations of authorities thereunder.*" Calvin failed to cite any authority for this point. This violation of the rules is not condoned.

Turning to the substance of Calvin's point, we note at the outset, that Calvin's arguments, regarding the trial court's treatment of the cattle proceeds as marital property and the disposition of the claim that said proceeds were used to cover expenses incurred in raising the cattle, were amply addressed in point I(C). We decline further comment on these issues. With regard to labor expended in raising the cattle, Calvin fails to cite any evidence that he presented this issue to the trial court. Moreover, our scrupulous review of the record fails to disclose any sum specified to compensate Calvin for his labor. We cannot say that the trial court erred. Calvin's point I(D) is, therefore, denied.

Calvin's point I(E) is that the trial court failed to apply the source of funds rule in ascertaining the property to be divided as marital property since it failed to consider that a portion of the property acquired during the marriage was from the proceeds of a loan secured solely by Calvin's nonmarital real estate, to be repaid after the dissolution of the marriage. Calvin correctly states, citing *Hoffmann v. Hoffmann,* 676 S.W.2d 817, 825 (Mo. banc 1984), that in determining if property is marital or separate, we follow the "source of funds rule". Under that rule, property is separate to the extent separate funds were used to acquire the

property. *Id.* Calvin suggests that we apply this rule in a non-traditional manner. Specifically, Calvin contends that we should recognize that marital assets and farm-related expenditures were acquired with the proceeds of loans secured solely by Calvin's non-marital assets, thus dictating that we determine that a portion of such property equal in value to the increase in Calvin's secured debt is in fact his separate property. Alternatively, Calvin argues that we should order the increase in Calvin's debt be satisfied from the proceeds of other marital assets before dividing those assets between the parties.

We decline to adopt Calvin's suggestions. Debts incurred by the parties during their marriage are not marital property. *Barth v. Barth,* 790 S.W.2d 246, 252 (Mo.App.1990). The trial court is under no obligation to distribute marital debts. *Id.* Thus, since the increase in debt secured by Calvin's real estate during the parties' marriage was not marital property, the trial court was not obligated to distribute such debts. The trial court, however, was required to consider the marital debts in establishing a fair division of marital property. *Id.*

Initially, we note that after a thorough review of the record, we are unable to determine exactly why the debt secured by Calvin's real estate increased from $3,000 to $36,400 in less than seven years. Calvin testified that he borrowed: (1) $4,675 in order to purchase a Dodge Caravan; (2) $4,500 to purchase a John Deere highlift; (3) $3,000 to purchase a new Holland round baler; and (4) $13,000 to purchase a J.D. Tractor. These figures total only $25,175. Even if we exclude the $3,000 premarital debt secured by this real estate, that still leaves $8,225 unaccounted for. This shortcoming is evident when reviewing the trial transcript. Calvin vaguely testifies that he "had to pay taxes, and I had to buy a license on my truck and stuff like that. And usually, a lot of times, didn't have enough, and I would have to borrow to pay my bills." The trial judge was free to disbelieve Calvin's testimony even when uncontradicted. *In re Marriage of Lewis,*

808 S.W.2d 919, 922 (Mo.App.1991). Thus, the court may have concluded, given the scant detail of Calvin's testimony, that not all of the debts were marital debts. Since the trial judge was in a better position than we are to determine Calvin's credibility, sincerity, and other trial intangibles which may not be shown by the record, we give due regard to the trial court's determination.

Moreover, even if the trial court erred in its designation of the marital debt as Calvin's obligation, this error does not necessarily invalidate the trial court's conclusion where the court ultimately reached the correct result as it did in this particular case. *Nedblake v. Nedblake*, 682 S.W.2d 852, 855 (Mo.App.1984). In keeping with the spirit of the modification of the Agreement, this court concludes that the trial court erred in the disposition of the cattle. The modification provides: "... we have agreed to share all of the cattle." The trial court, however, classified 15 cows, worth $9,000, as Calvin's separate property. Thus, any error in the marital debt designation was amply offset by the cattle award which did result in an equitable division of the parties' assets.

Finally, we note that the trial court's award allocated to Calvin almost all of the farm equipment, farm machinery and the sharpening equipment. These assets are the tools with which either of the parties could achieve farming and/or sharpening income. Almost all of the debt ($20,500) was associated with these income producing assets. To require a party who is receiving the income producing property to pay a debt associated with the property cannot be characterized as arbitrary or capricious. *Divine v. Divine*, 752 S.W.2d 76, 79 (Mo.App.1988). Since the trial court's decision is supported by substantial evidence, is not against the weight of the evidence and neither erroneously declares or applies the law, it is affirmed. Calvin's point I(E) is, therefore, denied.

Lastly, we turn to Calvin's point III. In this point, Calvin contends that the trial court erred in dividing the marital property since it failed to consider: (1) each party's economic circumstances; and (2) the income tax consequences to Calvin. Initially, we note that there is no evidence that the trial court failed to consider Calvin's and Martha's economic circumstances. Since Calvin's contention is unsupported, any relief is denied.

Moreover, while Calvin is correct in asserting that a trial court should take tax consequences into consideration in ordering the division of marital property, *In re Marriage of Lewis*, 808 S.W.2d 919, 924 (Mo.App.1991), there is no indication that Calvin presented evidence regarding such consequences. Having failed to show the tax consequences, Calvin will not now be heard to complain. *In re Marriage of Ross*, 772 S.W.2d 890, 892 (Mo.App.1989). Moreover, there may well be other ways, such as borrowing money or selling other assets, that Calvin could use rather than selling cattle. Calvin's point III is, therefore, denied.

For the reasons stated above, the trial court's decision is affirmed.

PUDLOWSKI, P.J., and CRIST, J., concur.