**In re the MARRIAGE OF
Bruce ROGERS and
Evelyn Rogers.**

**Bruce Rogers, Petitioner–Appellant,**

**v.**

**Evelyn Rogers, Respondent–
Respondent.**

**No. SD 29356.**

Missouri Court of Appeals,
Southern District,
Division Two.

Dec. 11, 2009.

Carolyn G. Buschjost, Williams, Robinson, Rigler & Buschjost, P.C., Rolla, MO, for Appellant.

Mark E. Rector, Allen and Rector, Lebanon, MO, for Respondent.

GARY W. LYNCH, Presiding Judge.

Bruce Rogers ("Husband") appeals the trial court's judgment and decree dissolving his marriage to Evelyn Rogers ("Wife"). Husband asserts four points of error on appeal, all related to the division of property. First, Husband contends the trial court abused its discretion in excluding, as a discovery sanction, his testimony of a $5,000.00 down payment on a farm he bought prior to the marriage. Second, Husband claims that the trial court's award to him of $30,000.00 in proceeds from prior cattle sales as part of his division of the marital property, which thereby resulted in an inflated equalization payment to Wife, was against the weight of the evidence and an abuse of discretion. Third, Husband contends the trial court erroneously declared and misapplied the law in its calculation of the non-marital portion of the property owned by Husband at the time of the marriage by failing to "allow, consider or require evidence of the value of the property as of the date of the marriage." Fourth, Husband asserts that the trial court's valuation of the marital portion of two farms owned by Husband at the time of the marriage erroneously declared and applied the law and was against the weight of the evidence because it attributed "all" appreciation in value to the marital portion of the property in the absence of any causal connection between the appreciation and the marital contribution. Finding no merit in any of Husband's points, we affirm.

### Factual and Procedural Background

Husband and Wife were married April 26, 1991. At the time of their marriage, both parties had previously acquired interests in certain parcels of real property. On October 18, 1989, Husband purchased a 209–acre tract in Dent County ("Dent County farm") and subsequently pur-

chased, on July 6, 1990, another parcel consisting of 177 acres in Texas County ("Texas County farm"). In 1987, Wife and her former husband, Gregory N. Newsome, purchased a 61.5 acre farm with a home in Texas County ("Newsome farm"). Upon the dissolution of their marriage, it was awarded to Wife. Following Husband and Wife's marriage, they resided in the home on the Newsome farm. Neither party jointly titled or gifted any portion of the respective parcels to the other spouse.

Before the parties' marriage, Husband raised cattle on the Dent County farm and the Texas County farm. Following their marriage, the parties continued with the cattle operation and also acquired horses. The horses were kept at the Newsome farm, and the cattle generally remained on the Dent and Texas County farms and various other rented pastures.

In January 2000, the parties separated for the first time. Wife continued living at the residence on the Newsome farm, and Husband initially stayed with his parents after leaving the marital home. In December 2000, Husband returned to live with Wife during the holiday season, but the couple separated again soon afterward, and Husband moved into a trailer on the Dent County farm. The parties reconciled in April or May 2001, but separated and started living in separate residences again after a short period, although they maintained an intimate relationship until the summer of 2004.

Husband petitioned for dissolution of marriage on November 28, 2005. Wife answered and counter-petitioned for dissolution on January 18, 2006. This case went to trial March 12, 2008. The main issues contested at trial included the classification, valuation, and disposition of the property.

In its second amended judgment and decree of dissolution filed on August 22, 2008, the trial court calculated the non-marital interests and marital interests in each of the three farms by applying the source-of-funds rule set forth in *Hoffmann v. Hoffmann*, 676 S.W.2d 817, 824 (Mo. banc 1984), through the formula set out in *In re Marriage of Herr*, 705 S.W.2d 619, 625 (Mo.App.1986). The valuations and calculations [1] as made by the trial court were as follows:

|  | Dent County farm | Texas County farm | Newsome farm |
|---|---|---|---|
| Value on date of marriage | 61,066.11 | 28,570.00 | 56,000.00 |
| Indebtedness on date of marriage | 59,941.08 | 28,339.32 | 49,284.59 |
| Non-marital contribution (**nmc**) | 1,125.03 | 230.68 | 6,715.41 |
|  |  |  |  |
| Wife's marital efforts | 0.00 | 0.00 | 0.00 |
| Martial funds used to reduce indebtedness | 13,372.74 | 5,839.89 | 27,72 2 .60 |
| Improvements made with marital funds | 9,500.00 | 1,500.00 | 2,500.00 |
| Marital contribution (**mc**) | 22,872.74 | 7,339.89 | 30,222.60 |
|  |  |  |  |
| Total Contribution (**tc**) | 23,997.77 | 7,570.57 | 36,938.01 |
|  |  |  |  |
| Value on date of dissolution | 329,200.00 | 160,000.00 | 184,500.00 |

**1.** Variations by a few cents in the calculated figures occur as a result of differences in internal rounding employed by the trial court and this court.

| | | | |
|---|---|---|---|
| Indebtedness on date of dissolution | 46,568.34 | 22,449.43 | 21,561.99 |
| Equity (e) | 282,631.66 | 137,550.57 | 162,938.01 |
| | | | |
| Non-marital property (nmc/tc X e) | 13,249.94 | 4,191.25 | 29,622.48 |
| Marital property (mc/tc X e) | 269,381.72 | 133,359.32 | 133,315.53 |

In addition, the trial court found:

After the separation, Husband sold marital cattle for which he did not account. At the date of separation, there were 123 cows, an equal amount of calves, and four or five bulls. By the time of trial, the number had been reduced to 49 cows, 16 calves, and one bull. The Court will add $30,000.00 to the marital property allocated to Husband as the value of cattle sold.

The trial court then divided the marital property and debts between the parties and, in order to "accomplish an equal division" thereof, ordered Husband to pay Wife the sum of $121,821.00 within ninety days.

Husband appeals the judgment, raising four points. Additional facts will be elicited as necessary to address each of Husband's points. Because Points I, III, and IV are all related to the valuation and characterization of the Dent County and Texas County farms, for ease of discussion, we address them first and in that order. We will then address and discuss Point II, which challenges the $30,000.00 cattle proceeds adjustment.

### Discussion

#### Point I—Exclusion of Husband's Testimony as a Discovery Sanction

■ Husband testified that when he purchased his Dent County farm, he "took over" a $61,066 note held by the previous title holder. Husband further offered testimony that, in addition to the balance on the note he assumed, he paid $5,000.00 as a down payment. Wife objected to the admission of this testimony, stating there had been no prior disclosure that the purchase price of the Dent County farm was anything other than $61,066, "as reflected in the records." Specifically, Wife asserted that before trial, interrogatories had been submitted to Husband, including interrogatory number 13, which requested, in pertinent part:

> INTERROGATORY NO. 13: On the date of separation from your spouse, August of 2004, were you the owner of any non-marital property or interests, any marital property or interests, or were you obligated upon any non-marital or marital debts? If so, please:
>
> (a) Complete the attached schedule for non-marital property which includes a description and quantity of each item, the date acquired, the purchase price, who has possession of each item, and the fair market value of each item[.]

Husband's answer to this interrogatory was: "No schedules were attached."

The trial court found that "[t]he objection to [Husband's] testimony that he paid $5,000.00 on what is known as the Dent County farm is sustained as this information was not provided in discovery."

In his first point, Husband claims that the trial court abused its discretion in excluding this evidence because Husband had, in fact, complied with the discovery request in interrogatory number 13 and, in the alternative, if he had failed to comply, Wife waived any sanction for such failure by her failure to request the imposition of

a sanction prior to trial.[2] Husband further claims that the erroneous exclusion of this evidence prejudiced him in the valuation of his non-marital interest in this farm. This is so, he argues, because based upon the trial court's reliance upon the purchase price of the farm as its value on the date of marriage, as discussed *infra* under the next point, the erroneous exclusion of the down payment improperly decreased the non-marital contribution, causing a diminution in his non-marital interest and a corresponding improper increase in the marital interest in the farm. Finding no abuse of discretion in the exclusion of the testimony on either asserted basis, we need not reach the prejudice contention.

"The purposes of discovery are to eliminate concealment and surprise, to aid litigants in determining facts prior to trial, ... to provide litigants with access to proper information with which to develop their respective contentions and to present their respective sides on issues framed by the pleadings ... [and] to preserve evidence, prevent unjust surprise, and formulate issues for trial.'" *Fairbanks v. Weitzman*, 13 S.W.3d 313, 327 (Mo.App.2000) (quoting *J.B.C. v. S.H.C.*, 719 S.W.2d 866, 869 (Mo.App.1986)). Rule 61.01(b) authorizes a trial court to impose sanctions for discovery violations, including a party's failure to answer interrogatories. "[A]n evasive or incomplete answer is to be treated as a failure to answer." Rule 61.01(a). "[A] trial court may admit or exclude testimony where a party provides incomplete or evasive answers to discovery

requests, including interrogatories." *Mitchell v. Schnucks Mkts., Inc.*, 100 S.W.3d 109, 112 (Mo.App.2002).

The trial court has considerable discretion in controlling discovery and imposing sanctions for a party's noncompliance with discovery. *Anderson v. Arrow Trucking Co.*, 181 S.W.3d 185, 188 (Mo.App.2005). Thus, a trial court's ruling on sanctions is reviewed for abuse of discretion. *Mitchell*, 100 S.W.3d at 112. Upon review, the trial court's ruling is presumed to be correct and will be reversed only when it clearly appears to be against the logic of the circumstances and so arbitrary and unreasonable as to shock the sense of justice and indicates that careful consideration was not accorded in reaching the result. *Sherar v. Zipper*, 98 S.W.3d 628, 632 (Mo. App.2003). "If reasonable persons could differ about the propriety of the trial court's action, then it is not an abuse of discretion." *Moore v. Weeks*, 85 S.W.3d 709, 722 (Mo.App.2002).

Husband's first contention—that he answered interrogatory number 13—has no merit. The interrogatory asked Husband to "[c]omplete the attached schedule for non-marital property which includes *a description and quantity of each item, the date acquired, the purchase price, who has possession of each item*, and *the fair market value of each item*" for any claimed "non-marital property or interests" as of the date of separation. (Emphasis added). While Husband's answer addresses the

---

2. In the argument portion of his brief, Husband raises several additional claims of error. For example, he argues that the trial court failed to make specific findings that his answer to interrogatory number 13 was evasive or incomplete and that Wife would not have been prejudiced by the admission of the evidence, that there was no evidence to support that Husband's response to this interrogatory indicated a deliberate disregard for the authority of the court, and that the trial court's "application of its ruling in regard to pretrial procedure regarding discovery responses was arbitrary and not applied consistently throughout the trial." Claims not raised in a point relied on need not be considered. *Foraker v. Foraker*, 133 S.W.3d 84, 102 n. 5 (Mo.App.2004) (citing *Lewis v. Dep't of Soc. Servs.*, 61 S.W.3d 248, 255 n. 2 (Mo.App. 2001)).

omission of an attached schedule, it does not respond to any of the specifically requested information. If the failure to attach the referenced schedule created any uncertainty or ambiguity concerning the specific information requested, Husband had the opportunity to object to the interrogatory on that basis or to seek a protective order.[3] *See* Rule 57.01(c)(3); Rule 56.01(c). Once he undertook to respond to the interrogatory without objection or protective order, however, he had the obligation to do so in a manner that was not evasive or incomplete. Rule 61.01(a). Husband's answer did not include "the purchase price" of the Dent County farm, which Husband claimed as his non-marital property, and because of such omission it was not complete. An incomplete answer to an interrogatory is treated as a failure to answer. *Id.* Therefore, the trial court did not abuse its discretion in finding that Husband failed to answer interrogatory number 13 as to the purchase price of the Dent County farm.

■ Husband next argues that Wife waived any sanction under Rule 61.01 for his failure to answer interrogatory number 13 when she failed to request the imposition of a sanction prior to trial. In support of this claim, Husband cites *Harrington v. Harrington,* 153 S.W.3d 315 (Mo.App. 2005), where the Western District of this Court found that the trial court abused its discretion in striking Husband's pleadings and barring him from presenting evidence, testimony, or affirmative defenses. *Id.* at 319–20. On the morning of trial, the children's guardian ad litem made an oral motion for sanctions, which the Western District held did not supply Husband with reasonable notice prior to the trial court's action in proceeding upon the motion as required by Rule 61.01. *Id.* Because of his reliance upon this case, apparently Husband's waiver argument is actually a challenge to the reasonableness of the notice he received of Wife's oral motion for sanctions before the trial court acted upon it. In that light, *Harrington* is easily distinguishable.

In *Harrington,* the guardian ad litem's motion for sanctions was premised upon the husband's failure to personally appear at trial, his alleged refusal to submit to drug testing as previously ordered by the court, his alleged dissipation of the children's assets, and his alleged noncompliance with terms of an order of protection. *Id.* at 317. The requested sanctions, which were actually imposed by the trial court, effectively denied the husband any meaningful participation in the trial on all issues, including those unrelated to the husband's alleged discovery violations. *Id.* at 319. Based upon the drastic and extensive nature of the requested sanctions and their potential effect upon the husband on issues unrelated to his failure or failures to comply with discovery, the Western District held that an oral motion on the morning of trial in that context did not comply with the reasonable-notice requirement of Rule 61.01. *Id.*

Here, on the other hand, Wife's motion for sanctions in the nature of an objection to specific testimony proffered by Husband came about as a result of Husband's attempt to introduce evidence about a fact

---

**3.** In his brief, Husband claims that

[Husband's] attorney pointed out in trial that [Husband's] answers to interrogatories stated that "no schedules were attached" or *he otherwise filed his objection.* [Wife's] attorney never *noticed up the objections for hearing* or provided the missing schedules,

nor did the attorney file a notice or Motion to Compel for ruling on the interrogatory request." (Emphasis added).

Nothing in either the transcript or the legal file supports Husband's contention that he filed an objection to interrogatory number 13.

he was obligated to disclose in discovery but failed to disclose. In this context, this case is more akin to the circumstances in *Moore, supra,* than to *Harrington.*

In *Moore,* the defendants attempted to call a witness they were obligated but had failed to disclose in their answer to an interrogatory. *Moore,* 85 S.W.3d at 721–22. The trial court sustained the plaintiffs' objection and denied the testimony as a discovery sanction. *Id.* The Western District of our Court found that the defendants' nondisclosure of the witness failed to give the plaintiffs reasonable notice that the defendants intended to raise this issue at trial and denied the plaintiffs "a reasonable opportunity to prepare for the issues the testimony would have raised at trial." *Id.* at 722. In this context, the Western District found no abuse in discretion in the trial court sustaining the oral motion to exclude the testimony as a discovery sanction. *Id.*

In the instant case, as was the circumstance in *Moore,* Husband could not direct the trial court to anything that put Wife on notice that he was claiming any payment for the Dent County farm in excess of the $61,066 promissory note or that Wife otherwise had a reasonable opportunity to prepare for this issue at trial. As pointed out by the court in *Moore:*

> In the context of Rule 61.01(b)[4], an abuse of discretion can occur when the

sanctions exceed that which is necessary to accomplish the purposes of discovery. The rules of discovery are designed to allow the litigants to determine the facts prior to trial, obtain access to information about the respective contentions, to preserve evidence, prevent concealment and unjust surprise, and formulate issues for trial. The rules must be enforced to achieve these objectives.

*Moore,* 85 S.W.3d at 722 (internal citations omitted). The sanction proposed by Wife in the case at bar was limited to the exclusion of a specific piece of evidence relating to a fact that Husband should have placed in issue by his answer to interrogatory number 13. This oral motion was made at the earliest possible time after Wife became aware that Husband attempted to insert this issue in the trial. As such, the notice provided by the oral motion was reasonable, and the trial court's exclusion of the evidence was not an abuse of discretion. Point I is denied.

### Point III—Valuation of Farms as of the Date of Marriage

In Husband's third point relied on, he claims that the trial court erred in its determination of his non-marital interest in the Dent County and Texas County farms, causing an unfair and inequitable division of the property to his prejudice,[5] in that

---

**4.** Rule 61.01(b) provides:
(b) **Failure to Answer Interrogatories.** If a party fails to answer interrogatories or file objections thereto within the time provided by law, or if objections are filed thereto which are thereafter overruled and the interrogatories are not timely answered, the court may, upon motion and reasonable notice to other parties, make such orders in regard to the failure as are just and among others the following:
(1) An order striking pleadings or parts thereof, or dismissing the action or proceeding or any part thereof, or render a judgment by default against the disobedient party.

(2) Upon the showing of reasonable excuse, the court may grant the party failing to answer the interrogatories additional time to file answers but such order shall provide that if the party fails to answer the interrogatories within the additional time allowed, the pleadings of such party shall be stricken or the action be dismissed or that a default judgment shall be rendered against the disobedient party.

**5.** While Husband spends much of his argument on this point in his brief discussing the prejudice to Husband caused by this alleged error, we need not address that issue because

the trial "court's calculation did not allow, consider or require evidence of the value of the property as of the date of the marriage[.]" Husband argues that the only evidence of the values of the properties at the time of marriage was the purchase price of each parcel. Husband purchased the Dent County farm for $61,066.11, approximately one and one-half years prior to his marriage to Wife. The Texas County farm was purchased for $28,570.00, approximately eight months prior to the parties' marriage. The trial court's judgment states that "[t]he parties seem to agree that the purchase price was also the value at the time of the marriage in 1991[.]" Husband, however, contends that he did not agree to that; rather, he proposed at trial that there had been a three percent increase in the value between the date of purchase and the date of the marriage.

Husband's claim fails for multiple reasons. First, Husband's premise—the trial court did not allow, consider, or require evidence of the value of the property as of the date of the marriage—is not correct and is not supported by the record. The purchase price can be utilized in a trial court's calculation if property was purchased in relatively close proximity to the time of the marriage. *In re Marriage of Canady*, 180 S.W.3d 534, 538 (Mo.App. 2006) (citing *Held v. Held*, 896 S.W.2d 709, 711 (Mo.App.1995)). Both farms were purchased within one and one-half years before the marriage. This time period, given the more than seventeen-year length of the marriage, is relatively close in proximity to the time of the marriage. Thus, the trial court had evidence before it and considered the value of the property as of the date of the marriage.

■ Second, Husband's argument to the trial court that the property appreciated by three percent annually was precisely that: argument. Husband chose not to provide the trial court with any evidentiary support for his argument. Husband points to his Exhibit 22, but it is nothing more than an admittedly demonstrative exhibit prepared by his counsel to illustrate Husband's method of calculating the non-marital interests in the farms by assuming an annual three percent appreciation on the purchase price from the date of purchase until the date of marriage. Husband failed, however, to support his assumption with any evidence in the record that the farms actually appreciated at that rate during that time period.

■ Third, Husband invited the trial court's utilization of the purchase price of each of the farms as the value at the time of the parties' marriage. As previously mentioned, Husband offered at trial Exhibit 22 to illustrate his method of calculating the respective non-marital interests in the farms premised upon the purchase price for each farm plus three percent annual appreciation on the purchase price from the date of purchase to the date of marriage. Husband then calculated the respective marital interest in each farm by subtracting his calculated value of the non-marital interest (purchase price plus three percent annual appreciation to date of marriage) from the current appraised value. Counsel for Husband, however, then stated that if the proposed formula utilizing the three percent appreciation factor was not acceptable, "I'd still ask the court to consider the purchase price as the value. I have some case law that says that the market value can be perceived to be the purchase price[.]" "It is settled law that a party may not complain on appeal of an alleged error in which he joined, acquiesced or invited by his conduct at trial." *Barnes v. Morris Oil Co.*, 263 S.W.3d 697,

of our determination that no error occurred in the first instance.

702 (Mo.App.2008) (citing *In re Marriage of Murphey,* 207 S.W.3d 679, 685 (Mo.App. 2006)). For the foregoing reasons, Point III is denied.

### Point IV—Classification and Valuation of Marital Interest in Farms

█ Husband's fourth point challenges the trial court's "valuation of the marital portion of nonmarital property" as erroneously declaring and applying the law, "in that the court's calculation considered all appreciation in the real estate as marital against the weight of substantial evidence that there was no causal connection between the appreciation and the marital contribution[.]" Husband claims that this error resulted "in a judgment distributing property between the parties that was neither fair nor equitable and prejudicial against [him]."

In reviewing the classification of property in a dissolution action, "[w]e affirm unless the judgment is against the weight of the evidence, not supported by substantial evidence, or erroneously declares or applies the law." *Blydenburg–Dixon v. Dixon,* 277 S.W.3d 815, 819 (Mo.App.2009).

Based upon his premise that the trial court's calculation considered *all* appreciation in the real estate as marital, Husband directs us to this Court's decision in *In re Marriage of Herr,* 705 S.W.2d 619 (Mo. App.1986), wherein we rejected as unsound the wife's proposition "that *all appreciation* of the husband's *separate property* interest in the farm occurring *during marriage is marital property." Id.* at 622. Relying upon *Hoffmann v. Hoffmann,* 676 S.W.2d 817 (Mo. banc 1984), this Court stated that "the source of the funds rule does not cause the entire increase in value of separate property accruing during a marriage to be marital property irrespective of the source of that increase." *Herr,* 705 S.W.2d at 622. It is

in this context we observed as a general guide that " '[e]nhancement in the value of a spouse's separate property which is caused by appreciation, inflation, changing economic conditions, or circumstances beyond the parties' control is not jointly acquired property unless the non-owning spouse can prove that his/her contributions were also a causal factor." *Id.* (quoting *Templeton v. Templeton,* 656 P.2d 250, 252 (Okla.1982)). Seizing upon this last statement and his assertion that Wife in the instant case did not present any evidence of such a causal connection, Husband claims that the trial court erroneously declared and applied the law in its classification and valuation of the marital interest in the farms.

Husband's point fails for two reasons. First, his premise—the court considered *all* appreciation as marital—is mistaken. The trial court's calculations, previously set out in the table in this opinion, demonstrate that the appreciation of each farm was apportioned between its respective nonmarital and marital interests.

█ Second, Husband's reliance on the previously quoted statement from *Herr* is misguided and taken out of context. The Court in *Herr* immediately follows the general guidance referred to by Husband with the observation that such guidance "is generally recognized under the judicially adopted source of the funds rule," *Herr,* 705 S.W.2d at 622–23, along with its corollary that " '[i]n order for a spouse to successfully prove that enhanced value is the result of joint endeavors, it must be shown that the net worth of the property increased during the marriage as the *direct result* of substantial contribution by the spouse of effort, skill or *funds.'" Id.* at 623 (quoting *Templeton,* 656 P.2d at 252) (emphasis added). Here, even though it made a specific finding that Wife made no marital contribution by her efforts, the

trial court found martial contributions in specific amounts were made by expending martial funds for improvements and to reduce debt. This latter finding, which Husband does not challenge on appeal, provides the causal connection referred to in *Herr* as between an increase in the net worth of the property during the marriage and a substantial marital contribution. *Id.* "While a marital 'interest' in separate property can require proof that a spouse contributed substantial *services* towards the property which led to an increased value of that property, *Hoffmann*, 676 S.W.2d at 826, this type of proof is not needed in the present case when 'the marital partners sacrifice marital *funds* ... in acquiring the increase.'" *McKown v. McKown*, 108 S.W.3d 180, 184 (Mo.App. 2003) (quoting *Meservey v. Meservey*, 841 S.W.2d 240, 246 (Mo.App.1992)) (emphasis added).

Using the "source of funds" rule from *Hoffmann* in the present case, the key to the analysis is whether the property was wholly acquired prior to the marriage. 676 S.W.2d at 823. Property is considered "acquired" as it is paid for. *Id.* at 824. So, in this case, Ms. McKown is entitled to a marital interest in the property proportionate to the increase in value of the property as it was acquired through the use of marital funds.

*McKown*, 108 S.W.3d at 184.

The same is true here. *Hoffmann* adopted the source of funds rule so the marital unit could equitably share in "the appreciated value of the property which is due to general economic conditions." 676

S.W.2d at 823. Thus, both the spouse who contributed nonmarital funds and the marital unit that contributed marital funds receive a proportionate and fair return on their investment. *Herr*, 705 S.W.2d at 624.

The trial court precisely followed the dictates of *Herr* in calculating the marital interest in each of the farms, and, in so doing, did not erroneously declare or apply the law.[6] *Id.* Husband's fourth point is denied.

*Point II—$30,000.00 Cattle Adjustment in Husband's Marital Property*

■ In his second point, Husband challenges the trial court's division of marital property. Husband claims that

> the trial court abused its discretion in adding $30,000 worth of nonexistent property in the form of prior cattle sales to [Husband] for the purpose of an equalization payment to [Wife] since this order of reimbursement was against the weight of substantial evidence and [Husband] did not squander, hide or otherwise dissipate the proceeds from the sales, which resulted in an unfair and inequitable division of property.

The circuit court's judgment in a dissolution proceeding will be affirmed on appeal unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

> A judgment will not be reversed unless it is against the weight of the evidence

---

6. In the argument portion of his brief under this point, Husband also asserts other claims of error, including that the trial court erred in applying the source of funds rule because the "rule should not be applicable in this case as the result unjustly enriches [Wife] and prejudices [Husband]" and in making an equal division of the marital property because "an equal distribution of marital property is neither fair or equitable." None of these claims were properly preserved for appellate review by inclusion in a point relied on. *Foraker*, 133 S.W.3d at 102 n. 5.

and then only with caution and a firm belief that the judgment is wrong. The "weight of the evidence" refers to the probative value of the evidence and not the quantity of the evidence. The evidence in the record is reviewed in the light most favorable to the circuit court's decision, and all evidence contrary to the judgment is disregarded.

*Hernandez v. Hernandez*, 249 S.W.3d 885, 887–88 (Mo.App.2008) (internal quotation marks and citations omitted). This court defers to the trial court's determination of the credibility of witnesses. *Spinabella v. Spinabella*, 293 S.W.3d 34, 35 (Mo.App. 2009).

In addition, "a trial court is vested with considerable discretion in dividing marital property." *Schneider v. Schneider*, 824 S.W.2d 942, 947 (Mo.App. 1992). We will interfere only "if the division is so heavily and unduly weighted in favor of one party as to amount to an abuse of discretion." *Id.* This Court presumes that the order prescribing the division of marital property is correct. *Id.* "Moreover, the party challenging the division has the burden of overcoming this presumption." *Id.*

As a general rule, the trial court may only value and divide assets which exist as of the date of trial of the dissolution. An exception to this general principle exists where a spouse is found to have secreted or squandered marital assets in anticipation of the marriage being dissolved. In such a case the court may charge the offending spouse with the value of the secreted or squandered asset. This may be accomplished by reducing the offending spouse's share of the division of marital property or by ordering reimbursement. A spouse who produces evidence that he or she used marital assets to pay for ordinary living expenses during the pendency of the divorce is not considered to have squandered the assets.

The burden of raising the issue of whether marital property has been squandered or secreted is on the spouse claiming that such conduct has occurred. Once raised, the burden of producing evidence shifts to the alleged wrongdoer spouse who must 'account' for the asset by presenting evidence as to its whereabouts or disposition. However, the burden of persuasion remains on the spouse who raised the claims that property had been misappropriated, the value of which had been squandered or secreted.

*Dowell v. Dowell*, 203 S.W.3d 271, 279 (Mo.App.2006) (internal quotation marks and citations omitted).

Viewing the evidence in the light most favorable to the judgment, as we must, the record reveals the following. At the time of the marriage in 1991, Husband had 123 cows, approximately 115 calves, and a small number of bulls. During the time Husband and Wife lived together, they maintained around 120 cows and calves. The parties separated in 2004, and Husband filed for dissolution in November 2005. By April 2006, Husband could only account for 79 cows, 64 calves, and 3 bulls. In July 2007, Husband could only identify 71 cows and 46 calves. By the time of trial, Husband had reduced the cattle herd to 49 cows, 16 calves, and 1 bull.

At all times during the marriage, all proceeds from the sale of cattle went to Husband and were under his direction and control. From 2000 through 2004, Husband's annual cattle sales averaged $20,202.00. Yet in 2005, Husband had $42,879.00 in cattle sales and, as indicated by testimony in reference to Exhibit V, close to $45,000.00 in cattle sales in 2006. By Husband's admission in reference to Exhibit V, his "sales of cattle went up

dramatically after [he] filed the petition for dissolution of marriage." [7]

Once Wife established that over the two-year period surrounding the filing of the petition of dissolution, Husband had more than $47,000.00 in cattle sales in excess of the average annual cattle sales for the preceding five years, the burden of producing evidence shifted to Husband to account for the disposition of those excess funds. *Id.* The *only* evidence presented by Husband in that regard was his conclusory testimony that he used the cattle sale proceeds to make payments on the Dent and Texas County farms, to buy farm equipment, and to buy whatever he needed. He offered no evidence that the farm expenses during this two-year period were unusually high or above average. He offered no documentary evidence supporting his conclusions, such as, but not limited to, deposit slips, bank statements, cancelled checks, journals or ledgers. "The trial court can accept or reject all, part or none of the testimony of any witness." *Peine v. Peine*, 200 S.W.3d 567, 580 (Mo.App.2006) (quoting *Colquitt v. Muhammad*, 86 S.W.3d 144, 148 (Mo.App.2002)). In assigning $30,000.00 of these proceeds to Husband in his share of the division of the marital property, the trial court, as it was free to do, simply found that Husband's testimony was too vague to have sufficiently demonstrated that the assets were not secreted or otherwise squandered, but were used to pay marital debts or expenses. *See Dowell*, 203 S.W.3d at 280. Such an assignment was not against the weight of the evidence and, as such, could not provide the basis for an abuse of the trial court's discretion in the division of the martial property. Husband's second point is denied.[8]

### Decision

The judgment of the trial court is affirmed.

SCOTT, C.J., and DUNLAP, Special J., concur.

---

**7.** Unfortunately, we are not privy to the information contained in Exhibit V, which was received in evidence and was before the trial court, because Husband has chosen to not deposit it with this Court. "Rule 81.12(a) requires that the record on appeal contain 'all of the record, proceedings and evidence necessary to the determination of all questions to be presented[.]' It is the appellant's duty to compile the record for appeal. Rule 81.12(c)." *Lester E. Cox Med. Ctrs. v. Richards*, 252 S.W.3d 236, 241 (Mo.App.2008). If the inadequacy in the record prevents review, this court will dismiss the point. *Id.* Where we can otherwise reach the merits of the point, however, this court simply presumes that "evidence excluded from the record on appeal is favorable to the trial court's judgment" and unfavorable to the appellant.

*Peine v. Peine*, 200 S.W.3d 567, 580 (Mo.App. 2006).

**8.** In the argument portion of his brief under this point, Husband also asserts that the trial court erred by failing to made any findings that Husband "squandered, hid or otherwise dissipated the marital assets (i.e., the profits from cattle sales)" and by failing to "rule or indicate whether or not it was including the 20 head of cattle that belonged to [Husband's] mother in its assessment of the value of the cattle or the sales made during the separation that it attributes to [Husband]." These claims were not properly preserved for appellate review by inclusion in a point relied on. *Foraker*, 133 S.W.3d at 102 n. 5.